J. M. WILLSON et al., Appellants,

v.

Ralph C. JOHNSTON et al., Appellees.

No. 7626.

Court of Civil Appeals of Texas.

Amarillo.

June 20, 1966.

Thomas J. Griffith, Jr., O'Connor & Brister, Lubbock, for appellants.

Crenshaw, Dupree & Milam, Lubbock, Ben P. Ayres, Floydada, for appellees.

DENTON, Chief Justice.

Appellants filed this suit seeking writs of mandamus and injunction and a complaint for contempt of court against appellees as officials of the Floydada Independent School District. Appellants alleged the appellees' willful refusal and failure to obey the judgment and orders of the trial court pertaining to the assessment and collection of 1963 ad valorem taxes. The trial court, without a jury, denied all relief sought and appellants have brought this appeal.

In the original suit appellants sought an injunction to restrain appellees from certifying and approving the tax roll of the school district for the year 1963. Mandamus was also sought to require appellees to comply with the Constitutional and statutory provisions relating to the assessment and collection of ad valorem taxes. The contention was made that not all taxable personal property was placed on the tax rolls, thus placing an undue tax burden upon real property owners of the district. A temporary restraining order was issued upon the filing of the original suit. On November 19, 1963 the trial court, with approval of all parties, appointed a Master in Chancery, who was charged with the duty of ascertaining taxable personal property which had not been rendered or placed on the district's tax roll prior to September 20, 1963. Such supplemental list was to be given the Board of Equalization for their study and approval and to incorporate this additional property into the 1963 tax roll. On January 3, 1964, on motion of the school district, the trial court authorized the district to certify the 1963 tax roll as it existed on September 19, 1963 and to proceed collecting taxes upon such tax roll, subject to the inclusion of additional items of personal property that might be added to the roll as a result of the Master's investigation. The court further directed the school district's tax assessor-collector to put aside 2% of the taxes collected and place it into a special fund to be used for the repayment of any

overpayments which would result from the adding of personal property upon the tax rolls.

On December 9, 1964 the trial court entered its final judgment approving the Master's report and adopting its findings. The judgment found the additional personal property reflected by the supplemental rendition constituted all additional personal property which should be awarded to the 1963 tax roll; and directed the school district to prepare such a roll and submit it to the Board of Equalization. The judgment further directed the district's tax assessor-collector to make adjustments "in the taxes assessed against the real and personal property" appearing in the original tax roll when the additional property was ultimately included. It then provided for the adjusted augmented roll to then be submitted to the Board of Equalization for its approval. Proportionate refunds were then to be made to those taxpayers who had previously paid their 1963 taxes. Subsequent taxpayers were to be credited in the same proportion.

As a result of letters sent by the tax collector and the Master in Chancery, approximately 747 taxpayers rendered additional personal property of the value of approximately $1,924,504.00. These renditions were then processed by the tax office into a supplemental tax roll. This procedure included ascertaining property value by an adopted schedule; eliminating such non-taxable items as stocks in Texas Corporations; deducting the first $250.00 of household furniture rendered; and eliminating duplicate renditions. The tax collector then took 47% of the value so remaining for tax purposes and then applied the tax rate. The supplemental tax roll, after this procedure was completed, reflected an additional $629,502.00 of taxable personal property added to the "augmented" tax roll. The tax collector described the augmented roll as a combination of the original roll and the supplemental roll. This supplemental roll was first submitted to the Board of Equalization on June 11,

1965 and was subsequently approved by the Board as submitted by the tax collector. Statements of additional taxes due on the supplemental roll were mailed on September 28, 1965, the date the present suit was filed. After adding $629,502.00 in taxable personal property to the tax roll the tax collector determined there was an .0216 credit or refund factor to be applied to taxes shown on the original roll. There was testimony this refund was made to taxpayers who had paid their 1963 taxes and that a credit in that amount was given unpaid taxes. These payments and credits were reflected in the augmented roll as finally approved.

The trial court filed findings of fact and conclusions of law. It found the school district's tax assessor-collector submitted the supplemental rendition to the Board of Equalization after deleting renditions of capital stock in Texas Corporations; the first $250.00 of each household furniture rendition, and duplicate renditions; that the augmented roll was prepared and submitted to the Board of Equalization and approved by it; that the tax refund factor of .0216 was calculated and that such refund was made to taxpayers who had already paid 1963 taxes on the original tax roll; that the augmented roll reflects the amount of refund due and that the appellants "in good faith and with reasonable diligence made substantial compliance with" the court's judgment and orders of January 3, 1964 and December 9, 1964. The court concluded appellants were not in contempt of court and the court's orders and judgment had been substantially complied with.

Appellants' basic contention is that the appellees did not comply with the trial court's order of December 9, 1964 which they contend ordered the school district to add the property placed on the supplemental roll to the existing tax roll, adjust such property to its 47% taxable value, and collect taxes on such property. They argue the tax collector acted arbitrarily and without authority in making any correc-

tion on the supplemental tax roll. As we understand their position, they say that approximately $904,506.00 or 47% of the rendered value of $1,924,504.00 was taxable property and should have been treated as such. They do not take into account any exempt property that might have been included in the supplemental roll or duplications. They say these factors were taken into account when the property was placed on the supplemental roll.

It is an elementary rule of law that mandamus will not lie to compel a public official to perform an official act unless it is shown the petitioners' right to have the act performed is clear. Williams v. Pitts, 151 Tex. 408, 251 S.W.2d 148. 37 Tex.Jur.2d, Mandamus, Section 108, page 765.

The only witness offered by appellants was a Certified Public Accountant who audited the supplemental tax roll as of October 11, 1963. He did not examine the Master's report or the supplemental roll after the October 1963 date. His findings relative to the value of stocks and bonds and household furniture reduced from the supplemental roll was substantially less than the amounts reflected on the assessor's roll, but his investigation took place prior to the appointment of the Master of Chancery, and approximately a year prior to the time the augmented roll was finally approved. This evidence was not sufficient to sustain appellants' burden in this cause.

Appellants further question the authority of the school district's assessor-collector to reduce the rendered value of personal property placed on the supplemental roll. The first $250.00 of the assessed value of household furnishings is exempt from taxation. Article 7150, Section 11, Vernon's Ann.Civ.St. Article 7211 empowers the tax assessor to raise values of property rendered if he is not satisfied with the rendered value; and if the assessor finds the property rendered has no market value the assessor shall place a real or intrinsic value on such property. If the taxpayer is not satisfied with the assessor's valuation, the article gives the taxpayer his remedy. We think the tax assessor had authority to reduce the rendered value of the household furniture to the extent of the statutory exemption. Stocks in Texas Corporations or a corporation which is required to list or render its capital and property for taxation in this state are not required to be rendered by the individual taxpayer. Articles 7152, Section (1) and 7163 V.A.C.S. The fact the taxpayers did in fact render this character of stock on the supplemental roll does not render them liable for taxes on such stock. The assessor did not exceed his authority in removing such stock from the supplemental tax roll. These reductions together with the elimination of duplications of property rendered on the original tax roll amounted to a substantial sum, but the amount of such reduction is not shown by this record. We cannot say, in the light of this record, that a substantial reduction in itself is evidence of failure to comply with the trial court's order. The undisputed evidence supports the findings and conclusions of the trial court that the appellants were in substantial compliance with the court's order and judgment.

The power to punish for contempt will only be exercised with caution. Contempt proceedings are generally criminal in their nature whether they grow out of criminal or civil actions. Deramus v. Thornton, 160 Tex. 494, 333 S.W.2d 824. Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306. Contempt is not to be presumed, but on the contrary is presumed not to exist. Deramus v. Thornton, supra.

Appellate courts are bound by the trial court's findings and conclusions which are supported by the evidence. City State Bank in Wellington v. Wellington Independent School District (Tex.Civ.App.) 173 S.W.2d 738, Affirmed 142 Tex. 344, 178 S.W.2d 114. From a review of this

record we are of the opinion there is evidence to support findings of the trial court that appellees were in substantial compliance with the orders and judgment of that court; and its conclusion appellees were not in contempt and that appellants were not entitled to writs of mandamus or injunction.

The judgment of the trial court is affirmed.

CHAPMAN, J., not participating.