IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0520
════════════
 
In re Coy Reece, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of 
Mandamus
════════════════════════════════════════════════════
 
 
Argued October 12, 2010
 
 
            
Justice Guzman delivered 
the opinion of the Court, joined by Chief 
Justice Jefferson, Justice 
Hecht, Justice Wainwright, 
Justice Medina, Justice Green, and Justice Lehrmann.
 
            
Justice Johnson filed a 
dissenting opinion.
 
            
Justice Willett filed a 
dissenting opinion, in which Justice 
Johnson joined as to Part IV.
 
            
It is well-rooted in our jurisprudence that contempt is a broad and 
inherent power of a court. But, we have also recognized that despite the breadth 
and necessity of that power, it is a power that must be exercised with caution. 
Today, we decide as a matter of first impression whether a trial court may hold 
a litigant in contempt for perjury committed during a deposition. We are further 
presented with a question arising from the bifurcated nature of the Texas 
judiciary and our limited habeas jurisdiction: whether we should exercise our 
mandamus jurisdiction to provide a forum for a civil litigant who is deprived of 
liberty pursuant to a court’s contempt order, and the Court of Criminal Appeals 
has declined to exercise its habeas jurisdiction.
            
In the underlying civil case, the relator was 
held in contempt and confined for perjuring himself during a deposition. The 
relator challenged his confinement by seeking a writ 
of habeas corpus in the Court of Criminal Appeals, but that court declined to 
exercise its jurisdiction citing, among other things, the civil nature of the 
case. The Court of Criminal Appeals directed the relator to pursue his remedies in this Court. Because we 
lack habeas jurisdiction in this case, the relator 
pursued relief by filing the instant petition for writ of mandamus to challenge 
his confinement.
            
We conclude the trial court abused its discretion by holding the relator in contempt for perjury occurring during a 
deposition, because such perjury did not obstruct the operation of the court. 
Further, because the underlying suit is civil in nature, and the Court of 
Criminal Appeals declined to grant the relator leave 
to file a habeas petition in that court, we hold the relator has no adequate remedy by appeal and therefore 
mandamus is the appropriate remedy to correct the trial court’s abuse of 
discretion. We conditionally grant relief.
            
I. Background
            
The trial 
court found relator Coy Reece in contempt for 
perjuring himself during a 2008 deposition in the underlying civil suit brought 
by real party in interest SB International, Inc. (SB). Specifically, during the 
deposition, Reece denied knowledge of a codefendant’s transactions in violation 
of a contract with SB,[1] but later admitted to deliberately making 
misstatements in the deposition.
            
After Reece’s admission, SB filed a motion for sanctions, requesting 
costs and fees incurred in connection with its efforts to obtain Reece’s 
compliance with discovery obligations, totaling $58,331.17.[2] SB secured a hearing on the motion for 
sanctions, but the trial court suspended the hearing and issued a show cause 
order to determine if Reece had committed criminal contempt. At the contempt 
hearing, Reece testified he had lied under oath during the deposition. On May 
29, 2009, the court found beyond a reasonable doubt that Reece was guilty of 
“repeatedly, deliberately, and intentionally [lying] under oath” and that his 
lying under oath “was reasonably calculated to impede, embarrass, and/or 
obstruct the court in the discharge of its duties.” The trial court found Reece 
in contempt and sentenced him to sixty-days confinement, with all but two weeks 
of the sentence suspended.
            
Reece filed a petition for writ of habeas corpus with the court of 
appeals, which granted his request for emergency relief, but that court later 
dismissed the habeas petition for want of jurisdiction.[3] Reece then sought habeas relief from the 
Court of Criminal Appeals, which denied his initial petition because he was not 
in custody. On June 24, 2009, after the trial court entered a revised commitment 
order and Reece was taken back into custody, Reece filed another habeas petition 
with the Court of Criminal Appeals. The Court of Criminal Appeals issued an 
order denying leave to file the habeas petition without prejudice, explaining 
that (1) the underlying case is civil in nature, (2) the Texas Supreme Court 
thus has jurisdiction to entertain Reece’s petition, and (3) although the Court 
of Criminal Appeals possesses jurisdiction to act on Reece’s petition, it 
declines to do so in order for Reece to pursue his remedies in the Texas Supreme 
Court. In re Reece, No. WR-72,199-02, slip op. 
at 2 (Tex. Crim. App. June 24, 2009) (per curiam) (not 
designated for publication) (order denying leave to file for habeas 
relief).
            
Reece filed a motion for reconsideration in the Court of Criminal 
Appeals, explaining that this Court lacks habeas jurisdiction because the 
contempt order does not emanate from a violation of an order, judgment, or 
decree. See Tex. Gov’t Code § 22.002(e). Reece also 
filed the instant mandamus petition with this Court.[4] In his mandamus petition, Reece argues 
that (1) the show cause order is deficient and does not afford him due process, 
(2) even if the show cause order is not deficient, perjury committed during a 
deposition is not punishable by contempt, and (3) this Court possesses mandamus 
jurisdiction to review a contempt judgment involving confinement in a civil case 
when the Court of Criminal Appeals refuses to exercise its habeas jurisdiction. 
We granted Reece’s motion for temporary relief and ordered him released on bond; 
he has served four days of his fourteen-day sentence.
            
To be entitled to mandamus relief, a relator 
must demonstrate (1) the trial court clearly abused its discretion, and (2) the 
relator has no adequate remedy by appeal. In re 
McAllen Med. Ctr., Inc., 275 S.W.3d 458, 462 (Tex. 2008) (orig. proceeding). 
We begin by considering the first prong in our mandamus 
inquiry: whether the trial court clearly abused its discretion by holding Reece 
in contempt.
            
II. Clear Abuse of Discretion
            
The crux of 
Reece’s arguments rests on his assertion that perjury committed during a 
deposition is not punishable by contempt, and therefore the trial court clearly 
abused its discretion by holding him in contempt for this conduct. In evaluating 
the merits of this assertion, we first examine the general contours of a court’s 
contempt power in Texas and then decide whether the specific misconduct at issue 
in this case is punishable by contempt.
            
A. Contempt of Court in Texas
            
We have broadly defined contempt as “disobedience to or disrespect of a 
court by acting in opposition to its authority,” Ex parte Chambers, 898 
S.W.2d 257, 259 (Tex. 1995) (orig. proceeding), and observed that contempt is a 
broad and inherent power of a court, see Ex parte Browne, 543 S.W.2d 82, 
86 (Tex. 1976) (orig. proceeding). But, despite the breadth of a court’s 
contempt power, we have warned it is a tool that should be exercised with 
caution. Herring v. Houston Nat’l Exch. Bank, 255 S.W. 1097, 1104 (Tex. 
1923) (orig. proceeding); accord Ex parte Taylor, 807 S.W.2d 746, 748 
(Tex. Crim. App. 1991). As the Court of Criminal Appeals has explained, 
“[c]ontempt is strong medicine”—the alleged 
contemnor’s very liberty is often at stake—and so it should be used “only as a 
last resort.” Ex parte Pink, 746 S.W.2d 758, 762 (Tex. Crim. App. 1988) 
(citing Willson v. Johnston, 404 S.W.2d 
870, 873 (Tex. Civ. App.—Amarillo 1966, orig. 
proceeding)).
            
Contempt may occur in the presence of a court (direct contempt), or 
outside the court’s presence (constructive contempt). Ex parte Gordon, 
584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding). In direct contempt cases, 
the court must have direct knowledge of the behavior constituting contempt, 
In re Bell, 894 S.W.2d 119, 127 (Tex. Spec. Ct. Rev. 1995), while the 
converse is true in a case of constructive contempt. As a result of this 
distinction, the trial court in a direct contempt proceeding is entitled, in 
some instances, to conduct a summary proceeding in which the alleged contemnor 
is not entitled to notice and a hearing, id.,[5] while a constructive contemnor is always 
entitled to notice and a hearing in order to defend or explain the charges, 
see Ex parte Gordon, 584 S.W.2d at 688; Ex parte Werblud, 536 S.W.2d 542, 546 (Tex. 1976) (orig. 
proceeding) (observing that constructive contempt entitles the contemnor to more 
procedural safeguards than those afforded to direct contemnors); see also Ex 
parte Krupps, 712 S.W.2d 144, 147 (Tex. Crim. App. 
1986) (explaining that constructive contempt adjudications satisfy due process 
if the contemnor is given notice, a hearing, and the opportunity to obtain an 
attorney).
            
Contempt is further classified into either civil or criminal contempt. In 
determining whether contempt is civil or criminal, it is necessary to examine 
the purpose behind the contempt order: civil contempt is “remedial and coercive 
in nature”—the contemnor carries the keys to the jail cell in his or her pocket 
since the confinement is conditioned on obedience with the court’s order, Ex 
parte Werblud, 536 S.W.2d at 545,[6] while criminal contempt is punitive in 
nature—“the contemnor is being punished for some completed act which affronted 
the dignity and authority of the court,” id. Thus, the distinction 
between criminal and civil contempt does not turn on whether the underlying 
litigation is civil or criminal, but rather on the nature of the court’s 
punishment. Ex parte Chambers, 898 S.W.2d at 266 (Gonzalez, J., 
dissenting); see generally Ex parte Werblud, 
536 S.W.2d at 545–46.
            
Here, Reece has admitted to lying outside the trial court’s presence 
during a deposition, and the purpose of the contempt judgment was to punish him 
for this misdeed rather than to coerce him into complying with an order. The 
trial court therefore held Reece in constructive criminal 
contempt.
            
Reece first asserts that a court’s constructive contempt power is limited 
to situations in which a person violates a court’s order, and thus Reece cannot 
be held in contempt here because he did not violate any order. We disagree with 
this overly narrow definition. While our case law suggests constructive contempt 
generally arises from the violation of a court order,[7] there are situations where a party or 
attorney to a suit could engage in behavior that may warrant a judgment of 
constructive contempt. For example, in Ex parte Privitt, a criminal defendant was found in contempt for 
attempting to bribe prospective jurors. 77 S.W.2d 663, 664 (Tex. Crim. App. 
1934); see also Ex parte Gordon, 584 S.W.2d at 688 (“Constructive contempt . . . is contemptuous conduct 
outside the presence of the court, such as the failure or refusal to 
comply with a valid court order.”) (emphasis added); 
Ex parte Murphy, 669 S.W.2d 320, 321 (Tex. Crim. App. 1983) (affirming 
judgment holding attorney in constructive contempt for failing to attend hearing 
and trial).[8] We decline Reece’s invitation to limit 
the boundaries of a court’s constructive contempt power in the manner he 
proposes.
            
Reece next argues that, even if constructive contempt is not limited to 
violations of court orders, it is at least confined to acts that obstruct, 
impede, or embarrass the court in the discharge of its duties. SB responds that 
although obstruction is a necessary element of contempt under federal law, it is 
not under Texas law.
            
At the outset, we acknowledge that federal statutory contempt standards 
are more stringent than Texas statutory standards. Under federal law, a court 
has discretion to punish for contempt only to the extent that a contemnor (1) 
engages in misbehavior in or near the court’s presence so as to obstruct the 
administration of justice, (2) in the case of a court officer, engages in 
misbehavior during official transactions, or (3) disobeys or resists a court 
order. 18 U.S.C. § 401. In Texas, however, the 
statutory guidance is more sparse. Section 21.002 of 
the Government Code sets forth the only statutory framework for contempt, 
broadly providing that a “court may punish for contempt.” Tex. Gov’t Code § 21.002(a).[9] Any restrictions on this authority are 
found in the common law.
            
Contrary to SB’s assertion, however, it is firmly established in our 
common law that a court’s ability to punish for contempt is not unfettered. 
Rather, an act must impede, embarrass, or obstruct the court in the discharge of 
its duties in order to constitute constructive contempt.[10] See Ex parte Norton, 191 S.W.2d 
713, 714 (Tex. 1946) (orig. proceeding); Ex parte Krupps, 712 S.W.2d at 149; In re Bell, 894 S.W.2d 
at 127. “The essence of contempt is the contemn[o]r’s conduct obstructs or tends to obstruct the proper 
administration of justice.” Lee v. State, 799 S.W.2d 750, 752 (Tex. Crim. 
App. 1990); see Ex parte Gibson, 811 S.W.2d 594, 596 (Tex. Crim. 
App. 1991) (per curiam) (setting aside a judgment for 
contempt arising from an attorney sending an angry letter to the court of 
appeals because this act did not disrupt the court in the performance of its 
duties).[11] Because conduct must additionally 
obstruct the court in the performance of its duties to constitute constructive 
contempt, we turn to whether a litigant’s misstatements during a deposition 
amount to such an obstruction.
            
B. Perjury as Grounds for Contempt
            
This Court 
has not had occasion to determine whether perjury in a deposition obstructs a 
court’s performance and thus constitutes contempt. Federal law includes 
obstruction as an element of contempt and is therefore instructive in our 
analysis.
            
It is axiomatic under federal law that perjury alone is not a ground for 
contempt unless the conduct also obstructs the court in the performance of its 
duties. See In re Michael, 326 U.S. 224, 228 (1945) (concluding that 
perjury alone does not constitute an obstruction justifying the exertion of a 
court’s contempt power); Ex parte Hudgings, 249 
U.S. 378, 383 (1919) (same); Matusow v. 
United States, 229 F.2d 335, 341 (5th Cir. 1956) (“It is well settled that 
proof of perjury alone will not sustain a conviction for contempt, but 
misbehavior constituting obstruction of the court must also be established.”). 
Because a person’s conduct must obstruct a court in the performance of its 
duties to constitute constructive contempt, we hold that perjury committed 
during a deposition does not alone constitute constructive contempt. To 
constitute constructive contempt, such perjury must actually obstruct a court in 
the performance of its duties.
            
SB argues that even if obstruction is a necessary element in a 
constructive contempt case, Reece’s perjury met this element because it 
interfered with and prejudiced SB during the underlying litigation. While we 
agree that Reece’s perjury undoubtedly may have caused SB difficulty in the 
discovery process, we cannot say, on this record, that it obstructed the court 
in the performance of its duties. Reece’s behavior was reprehensible: he 
admitted to making intentional misstatements during his deposition concerning 
core issues in the underlying litigation, behavior which inevitably caused his 
opponent delays and additional costs. See Soliz v. 
State, 97 S.W.3d 137, 142 (Tex. Crim. App. 2003) (observing that perjury, 
including in a deposition, has the effect of hindering the accurate resolution 
of legal proceedings). But we fail to see how Reece’s misstatements during his 
deposition rose to the level of actually obstructing the court in the 
performance of its duties. Neither the contempt orders, nor the record, 
demonstrate this additional element of obstruction.
            
During discovery it is inevitable that inconsistencies will arise, but 
the function of our legal system is to ascertain the truth from within these 
inconsistencies. See In re Michael, 326 U.S. at 227–28. As the Supreme 
Court reminds us:
 
All perjured relevant testimony is at war with justice, 
since it may produce a judgment not resting on truth. Therefore it cannot be 
denied that it tends to defeat the sole ultimate objective of a trial. It need 
not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of 
contradictory evidence, and to do so the fact finding tribunal must hear both 
truthful and false witnesses.
 
 
Id. We are loath to contemplate a system 
where litigants and their attorneys scour transcripts, searching for any 
misstatement for the sole purpose of accusing the opponent of contempt and 
ultimately securing the opponent’s confinement. Authorizing contempt in a 
situation such as the instant one also begs several questions. Is any 
misstatement during a deposition punishable by contempt, no matter how 
immaterial? Or, as the Supreme Court has noted, could a court, in believing a 
witness testified falsely, punish the person for contempt with the purpose of 
compelling the person to testify in a manner the court considers truthful? See Ex parte Hudgings, 249 
U.S. at 384. The Supreme Court has warned of “a potentiality of 
oppression and wrong” that could result from authorizing a court to exercise its 
contempt power in a situation of stand-alone perjury. See id. If a court 
may hold a litigant in contempt for making misstatements during a deposition, 
the risk for the “oppression and wrong” the Supreme Court contemplated becomes 
too great. See id.
            
A trial court has other weapons in its arsenal to discourage perjury 
during a deposition without resorting to restraining a person’s liberty in a 
contempt proceeding. First, a deposition is a discovery tool. As such, our rules 
make available the possibility of a range of sanctions for discovery abuse. 
See Tex. R. 
Civ. P. 215; Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 
840 (Tex. 1986) (per curiam). 
Here, SB moved for sanctions in response to Reece’s admission that he lied 
during the deposition; the trial court issued a show cause order concerning 
contempt on its own initiative. The trial court could have found that Reece 
abused the discovery process and imposed sanctions ranging from payment of SB’s 
expenses caused by the failure, including attorney’s fees, to rendering a 
default judgment. See Tex. R. 
Civ. P. 215.3, 215.2(b)(1)–(5), (8).
            
Second, a trial court has the option of referring a perjury allegation to 
the district attorney for criminal prosecution. See Soliz, 97 S.W.3d at 146 (noting the power of courts to 
prosecute perjury within the parties’ depositions). As applicable to this 
case, a person commits the offense of perjury if, with intent to deceive, the 
person makes a false statement under oath; such an offense is punishable as a 
Class A misdemeanor. Tex. Penal Code § 
37.02. The greater offense of aggravated perjury is 
available if the perjury is made in connection with an official proceeding and 
is material, punishable as a third degree felony. Id. § 37.03.[12]
            
“Courts ‘must be on guard against confusing offenses to their 
sensibilities with obstruction to the administration of justice.’” Ex parte 
Gibson, 811 S.W.2d at 596 (quoting Brown v. United States, 356 U.S. 
148, 153 (1958)). Because we hold that perjury committed during a deposition is 
only punishable by contempt if the act additionally obstructs the court in the 
performance of its duties, and that no such obstruction occurred here, the trial 
court’s contempt orders against Reece are void.[13] Accordingly, we conclude the trial court abused its 
discretion by holding Reece in contempt.[14]
            
III. No Adequate Remedy by Appeal
            
We now turn 
to whether Reece has met the second element required for the exercise of our 
mandamus jurisdiction: the lack of an adequate remedy by appeal. The parties 
agree this Court lacks jurisdiction to grant habeas relief in this matter; we 
may only exercise our habeas jurisdiction when the contemnor’s confinement is on 
account of a violation of an order, judgment, or decree previously made in a 
civil case. See Tex. Gov’t Code § 22.002(e); Tex. Const. art. 
V, § 3. The Court of Criminal Appeals—and not this 
Court—is the state’s appellate court afforded general original habeas 
jurisdiction.[15] See Tex. Const. art. V, § 5; 
Ex parte Thompson, 273 S.W.3d 177, 181 (Tex. Crim. App. 2008). 
Reece contends that because the Court of Criminal Appeals refuses to exercise 
its habeas jurisdiction, he is left with no avenue to challenge his confinement. 
Under these circumstances, Reece argues this Court should exercise its mandamus 
jurisdiction and release him from confinement. SB counters that this Court lacks 
jurisdiction over Reece’s mandamus petition because it is inherently a habeas 
petition styled as a mandamus petition: SB contends habeas is the only vehicle 
for challenging a person’s confinement in a contempt case, and a party may not 
relabel a petition as one of mandamus to evade this 
requirement.
            
As stated 
above, the Texas Constitution grants this Court limited jurisdiction to review 
lower court decisions through the writ of habeas corpus. Tex. Const. art. V, § 3(a) (“The Supreme 
Court and the Justices thereof shall have power to issue writs of habeas corpus, 
as may be prescribed by law . . . .”). Section 22.002(e) of 
the Government Code prescribes the reach of this Court’s habeas 
jurisdiction:
 
The supreme court or a justice of the supreme court, 
either in termtime or vacation, may issue a writ of 
habeas corpus when a person is restrained in his liberty by virtue of an 
order, process, or commitment issued by a court or judge on account of the 
violation of an order, judgment, or decree previously made, rendered, or entered 
by the court or judge in a civil case.
 
 
Tex. Gov’t 
Code § 22.002(e) 
(emphasis added). Thus, if the basis of contempt is not a previous violation of 
a court order, this Court lacks jurisdiction to review a sentence of confinement 
by way of writ of habeas corpus, even in a civil case. Ex parte Morris, 
349 S.W.2d 99, 100 (Tex. 1961) (orig. proceeding).
            
We have previously indicated that a petition for writ of habeas corpus is 
generally the only method for attacking an order of contempt. See Deramus v. Thornton, 333 S.W.2d 824, 827 (Tex. 1960) 
(orig. proceeding) (“We have uniformly held in this State . . . that the 
validity of a contempt judgment can be attacked only collaterally and that by 
way of habeas corpus.”). However, we also left open the possibility of 
circumstances “where the writ of habeas corpus would not be adequate and where 
mandamus would be the proper remedy.” Id.; see also Dunn v. 
Street, 938 S.W.2d 33, 35 (Tex. 1997) (orig. proceeding) (per curiam) (citing Deramus and 
observing same).
            
On this basis, we have held mandamus is available to challenge an order 
of contempt not involving confinement given the unavailability of the Court’s 
statutory habeas corpus jurisdiction in that circumstance. See In re 
Long, 984 S.W.2d 623, 625 (Tex. 1999) (orig. proceeding) (per curiam) (“Contempt orders that do not involve confinement 
cannot be reviewed by writ of habeas corpus, and the only possible relief is a 
writ of mandamus.”); Rosser v. Squier, 902 
S.W.2d 962, 962 (Tex. 1995) (orig. proceeding) (per curiam) (entertaining the exercise of mandamus jurisdiction 
to determine whether fine-only contempt order was void, given the unavailability 
of the Court’s habeas jurisdiction). But, today, we examine whether section 
22.002 permits this Court to exercise its mandamus jurisdiction when the 
contemnor is confined.
            
Like SB, several courts of appeals have presumed mandamus is limited to 
the review of fine-only contempt orders, but not orders that result in 
confinement.[16] In determining 
whether this maxim is correct, we first consider the contours of both our own 
and the Court of Criminal Appeals’ habeas jurisdiction, and then address our 
mandamus jurisdiction.
            
A. Habeas Corpus Jurisdiction
            
Before determining whether mandamus relief is available here, we note, 
and the parties do not dispute, that Reece may not pursue relief through the 
writ of habeas corpus in this Court. By virtue of the particularities of this 
state’s bifurcated judicial system and the problems arising from the division of 
habeas corpus jurisdiction between the Court of Criminal Appeals and this Court, 
we lack habeas jurisdiction over this case. The Court of Criminal Appeals is the 
court of last resort for criminal matters, Tex. Const. art. V, § 5, while this Court 
is the court of final review for civil matters, id. art. V, § 3. This framework, while 
at times imperfect, has been in place since 1876, and is the cornerstone of the 
bifurcated system of appeals in this state. See State ex. rel. McNamara, Co. 
v. Clark, 187 S.W. 760, 762 (Tex. Crim. App. 1915) (“Whether wisely or 
unwisely, the people of this state in framing their Constitution divided the 
jurisdiction of the civil and criminal courts of final resort, conferring on the 
Supreme Court final jurisdiction in all civil matters, and upon [the Court of 
Criminal Appeals] final jurisdiction in all criminal 
matters.”).
            
The history of the two high courts’ respective habeas jurisdictions is 
less than clear. Until 1876, this Court possessed the general power to issue 
writs of habeas corpus, as well as appellate jurisdiction over criminal law 
matters. Tex. Const. 
of 1869, art. V, § 
3; Tex. Const. of 1866, art. IV, § 
3; Tex. Const. of 1861, art. IV, § 
3; Tex. Const. of 1845, art. IV, § 3; see also 
Ex parte Jackson, 252 S.W. 149, 150 (Tex. 1923) (orig. proceeding). 
But in 1876, the newly adopted Texas Constitution removed jurisdiction over 
criminal cases from this Court and conferred such jurisdiction to the newly 
created Court of Appeals, which was granted not only jurisdiction over criminal 
appeals and certain low-dollar civil appeals, but also general authority to 
issue writs of habeas corpus. Tex. Const. art. 
V, § 3 (amended 1891 and 1980); id. § 6 
(amended 1891); see Ex parte Jackson, 252 S.W. at 150.[17] At the 
same time, the Constitution revoked this Court’s habeas corpus jurisdiction. 
Tex. Const. art. V, § 3 
(amended 1891 and 1980). In 1891, the Texas Constitution was amended to 
abolish the Court of Appeals and create the Court of Criminal Appeals, limiting 
the Court of Criminal Appeals’ appellate jurisdiction to criminal law matters, 
and granting this Court habeas corpus jurisdiction once more, but only as “may 
be prescribed by law.” Tex. S.J. Res. 16, 22nd Leg., R.S., 
1891 Tex. Gen. Laws 199, 199–200 (amending Tex. Const. art. V, §§ 
3, 5). This constitutional provision has remained unchanged for over 100 
years.
            
Though the Texas Constitution granted this Court habeas jurisdiction as 
“may be prescribed by law,” we lacked any actual statutory authority to grant 
writs of habeas corpus until 1905, when the Legislature enacted Senate Bill 36. 
This bill authorized us to exercise habeas jurisdiction, but only in situations 
where a contemnor’s confinement is by virtue of a violation of an order in a 
civil case. Act of February 24, 1905, 29th Leg., R.S., ch. 17, § 1, 1905 Tex. Gen. Laws 20, 20 (current version at 
Tex. Gov’t Code § 22.002(e)). This statute 
has remained substantively the same since its enactment and continues in effect 
today.
            
As a matter of historical context, the Legislature apparently enacted 
Senate Bill 36 to ensure the Court of Criminal Appeals determines criminal 
matters and this Court civil matters in habeas 
proceedings, in line with the bifurcated system contemplated in our 
Constitution. As the full report from the House Judiciary Committee 
states:
 
Under the present status of the law all writs of habeas 
corpus sued out by a person who has been fined or imprisoned for a violation of 
any order, judgment or decree entered in a civil case, go upon appeal to the 
Court of Criminal Appeals instead of the Supreme Court. This often results in 
confusion and conflicts of decision authority. The object of the bill is to 
harmonize our judicial decisions and jurisdiction so that all civil matters 
shall be determined by the Supreme Court and all criminal matters by the Court 
of Criminal Appeals.
 
 
House Judiciary Comm., Full Report, 
Tex. S.B. 36, 29th Leg., R.S. (1905) (emphasis added). Over the past 100 years, 
contempt orders arising from civil cases concern a contemnor’s violation of a 
court order the vast majority of the time. See James L. Branton, Note, Ex parte Morris, 349 S.W.2d 99 
(Tex. 1961), 40 Tex. L. Rev. 
413, 416 (1962) (noting the rarity of contempt judgments arising from civil 
cases that do not involve violations of a prior court order and recommending a 
legislative amendment to grant this Court jurisdiction over all contempt matters 
arising from civil cases). The Legislature, perhaps, simply did not envision 
contempt in civil cases extending beyond this limited scope, and so crafted this 
Court’s habeas jurisdiction accordingly. Similarly, the Court of Criminal 
Appeals has suggested the same purpose behind Senate Bill 36: to confer original 
habeas corpus jurisdiction to this Court in all civil cases in order to better 
maintain the bifurcated court system contemplated in the Texas Constitution. 
See Ex parte Wolf, 34 S.W.2d 277, 278 (Tex. Crim. App. 1930) (noting that 
the Court of Criminal Appeals should avoid exercising habeas jurisdiction in 
civil cases due to the possibility of “find[ing] 
ourselves in conflict with the civil courts, and thus interfer[ing] with [the civil 
courts’] proper functioning and the administration of justice”); Ex parte 
Zuccaro, 162 S.W. 844, 845 (Tex. Crim. App. 1913) 
(observing that the Court of Criminal Appeals has jurisdiction in criminal cases 
and has no jurisdiction in “civil cases of any 
character”).
            
Nonetheless, this Court has generally properly declined to exercise 
habeas jurisdiction in contempt cases arising from civil suits where a violation 
of a court order is not the grounds for contempt, as required by the plain 
language of section 22.002(e) and its predecessors.[18] But the result of this Court’s limited 
habeas jurisdiction in civil cases has led to an occasional inefficient 
back-and-forth between the Court of Criminal Appeals and this Court on the issue 
of jurisdiction, as well as some difficulties when the underlying case is civil 
in nature, but falls inside the statutory loophole created by the particular 
division of habeas jurisdiction between the Court of Criminal Appeals and this 
Court.
            
 Despite its general original habeas jurisdiction, the Court of 
Criminal Appeals has deferred to this Court in cases where the two courts 
clearly have concurrent habeas jurisdiction over civil matters.[19] And, as in the instant case, the Court 
of Criminal Appeals has preferred to defer to this Court in contempt proceedings 
arising from civil cases before exercising its habeas jurisdiction, even when it 
is less evident this Court possesses jurisdiction over the matter.[20] The issue we must resolve is whether 
mandamus is an appropriate remedy in a situation where we lack habeas 
jurisdiction to review a contempt order involving confinement arising from a 
civil case, but the Court of Criminal Appeals declines to exercise its general 
habeas jurisdiction.
            
B. Mandamus Jurisdiction
            
Unlike our habeas jurisdiction, our constitutional and statutory grant of 
mandamus jurisdiction is broad; this Court possesses general original 
jurisdiction to issue writs of mandamus. See Tex. Const. art. V, § 
3(a) (granting the Court power to issue writs of mandamus as specified by the 
Legislature); Tex. Gov’t Code § 22.002(a) (permitting the Court to issue 
writs of mandamus “agreeable to the principles of law regulating those 
writs”). Because we ascertain nothing in the statutory 
grant of our mandamus jurisdiction precluding us from granting relief here, and 
further determine the circumstances of this case warrant the exercise of our 
mandamus jurisdiction, we conclude mandamus is an appropriate remedy for Reece’s 
unlawful confinement.
            
First, the limit SB proposes on our mandamus jurisdiction is unwarranted 
as a matter of statutory construction. While a person must be confined 
for us to exercise our habeas jurisdiction, this is so only because the habeas 
statute specifically states that a person must be “restrained in his liberty” 
for that remedy to be available. See 
Tex. Gov’t 
Code § 22.002(e). But 
the converse is not true: our statutory grant of habeas jurisdiction does not 
prohibit us from exercising mandamus jurisdiction when a person is 
confined. See id. Nor does the statute prescribing our mandamus 
jurisdiction state that mandamus relief is unavailable when a person is 
confined—instead, as noted above, our statutory grant of mandamus jurisdiction 
is broad. Id. § 22.002(a). The Legislature could 
have included language designating habeas corpus as the exclusive remedy for 
unlawful confinement, but declined to do so. Cf. MCI Sales & Serv., Inc. 
v. Hinton, 329 S.W.3d 475, 504 (Tex. 2010) (declining to limit a statutory 
designation as exclusive since the terms of the statute did not include such a 
limitation). We will not read such a limitation into the statutory scheme 
governing our mandamus jurisdiction.
            
Further, mandamus is an “extraordinary remedy, not issued as a matter of 
right, but at the discretion of the court.” In re Prudential Ins. Co. of 
Am., 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). “Mandamus review of 
significant rulings in exceptional cases may be essential to preserve important 
substantive and procedural rights from impairment or loss . . . .” Id. 
at 136. Mandamus is a remedy not restricted by “rigid rules” that are 
“necessarily inconsistent with the flexibility that is the remedy’s principle 
virtue.” Id.; see also In re McAllen, 275 S.W.3d at 464 (noting 
that whether a clear abuse of discretion can be remedied on appeal “depends 
heavily on circumstances, it must be guided by analysis of principles rather 
than simple rules that treat cases as categories”). And mandamus is a proper 
vehicle for this Court to correct blatant injustice that otherwise would elude 
review by the appellate courts. See In re Prudential, 148 S.W.3d at 
138.
            
It is difficult to imagine a circumstance more compelling for the 
exercise of our mandamus jurisdiction than a situation where the relator’s liberty interests are threatened without a 
remaining procedural safeguard for challenging his confinement. Certainly, a 
result of our inaction is a potential waste of judicial and litigant resources 
as the case travels between this Court and the Court of Criminal Appeals, with 
neither court exercising jurisdiction to consider the merits of Reece’s 
petition. But the further consequence of Reece’s lack of an adequate appellate 
remedy in this matter is his unlawful confinement: the relator’s very liberty interests are at stake with no other 
procedure to challenge his confinement in our state 
courts.
            
Finally, because mandamus is expressly reserved for situations where a 
relator lacks an adequate remedy by appeal, we have 
employed it in other situations where, as here, a statutory gap prevents the 
relator from obtaining adequate appellate relief. For 
example, before the Legislature enacted section 51.016 of the Civil Practice and 
Remedies Code, a party improperly denied the benefit of arbitration under the 
Federal Arbitration Act had no right to interlocutory appeal in state courts. 
See Jack B. Anglin Co. v. Tipps, 842 S.W.2d 
266, 272 (Tex. 1992) (orig. proceeding). The Court therefore held 
mandamus was the appropriate remedy in wrongful denials of motions to compel 
arbitration under the FAA since otherwise the very subject of the appeal—the 
right to arbitrate, as contracted for by the parties—would be rendered illusory. 
Id. Eventually, of course, the Legislature closed this gap by enacting a 
law authorizing interlocutory appeals under the FAA in Texas courts. See 
Tex. Civ. Prac. & Rem. 
Code § 51.016.[21]
            
More relevant to the instant dispute, until 1978, the Court of Criminal 
Appeals lacked jurisdiction to grant writs of mandamus except as necessary to 
protect its own judgments. See Tex. Const. art. V, § 5 
(amended 1977 and 1980); Thomas v. Stevenson, 561 S.W.2d 845, 847 (Tex. 
Crim. App. 1978). To fill this jurisdictional gap, this Court 
occasionally entertained mandamus petitions filed by criminal defendants, 
primarily involving requests to compel courts to begin trial in accordance with 
the defendant’s right to a speedy trial. See, e.g., Fariss v. Tipps, 463 S.W.2d 176, 180–81 (Tex. 
1971) (orig. proceeding) (observing that this Court has mandamus jurisdiction in 
civil and criminal cases and defendant seeking speedy trial has no adequate 
remedy by appeal); Lawrence v. State, 412 S.W.2d 40, 40 (Tex. 
1967) (orig. proceeding) (per curiam); Cooper v. 
State, 400 S.W.2d 890, 890–92 (Tex. 1966) (orig. proceeding); Wilson v. 
Bowman, 381 S.W.2d 320, 321 (Tex. 1964) (orig. proceeding). In 1978, the 
people amended the Texas Constitution, granting the Court of Criminal Appeals 
mandamus jurisdiction over all criminal law matters. See Tex. S.J. Res. 
18, 65th Leg., R.S., 1977 Tex. Gen. Laws 3359, 3359–60; Stevenson, 561 
S.W.2d at 846–47.[22] This Court has since limited its 
exercise of mandamus review to civil matters. See Stevenson, 561 S.W.2d 
at 847.[23]
            
Our Constitution grants the Court of Criminal Appeals jurisdiction over 
criminal matters and this Court jurisdiction over civil cases. Tex. Const. art. V, §§ 
3, 5. As it has done historically, the Court of Criminal Appeals 
prudently deferred to this Court because the underlying case is civil in nature. 
But, by virtue of a statutory limitation, we lack jurisdiction to issue a writ 
of habeas corpus to discharge the relator from 
unlawful confinement in this civil case. The constitutional and statutory 
contours of our mandamus jurisdiction, however, are not so limited. Because the 
Court of Criminal Appeals declines to exercise jurisdiction over this civil 
case, Reece is left without a procedure for challenging his confinement in our 
state appellate courts. Accordingly, we hold Reece has no adequate remedy by 
appeal. We note that our holding is limited to situations where the underlying 
dispute is civil in nature, and the Court of Criminal Appeals declines to 
exercise its habeas jurisdiction. A relator does not 
lack an adequate remedy by appeal when the Court of Criminal Appeals entertains 
the merits of a habeas petition but dismisses with prejudice or denies relief. 
In other words, a relator is not entitled to a “second 
bite at the apple” by virtue of our holding.
            
C. Response to Dissent
            
In his 
dissent, Justice Willett argues that an “express statutory prohibition” 
precludes our exercise of mandamus jurisdiction here. Justice Willett points to 
the unavailability of our habeas jurisdiction in this matter as a “sign” that we 
are not meant to hear appeals of any sort—including by way of mandamus—arising 
from contempt orders not involving a violation of a previous court order. As 
such, Justice Willett reads the statute permitting us to issue writs of mandamus 
“agreeable to the principles of law regulating those writs,” Tex. Gov’t Code § 22.002(a), as 
circumscribed by the limitations in our habeas statute. Yet, the plain text of 
the statute governing our original proceeding jurisdiction does not comport with 
Justice Willett’s interpretation. As discussed above, neither our statutory 
grant of habeas or mandamus jurisdiction prohibits us from exercising mandamus 
jurisdiction when a person is confined, and we decline to read such a limitation 
into the language of the statute.
            
Despite his statements to the contrary, the rule Justice Willett’s 
dissent attempts to establish is that express legislative permission is required 
for us to exercise our mandamus jurisdiction. Under his reasoning, if a statute 
grants jurisdiction in only a limited circumstance, it must follow that we are 
forbidden from exercising our mandamus jurisdiction in a situation falling 
outside the parameters of that limitation. The weakness inherent in this 
argument is obvious in the context of arbitration. We could have interpreted the 
Legislature’s specific allowance for interlocutory appeal under the Texas 
Arbitration Act in the absence of a law allowing for the same under the Federal 
Arbitration Act as a “sign” that the Legislature did not intend for any appeal, 
including by mandamus, under the FAA. But we wisely declined to limit our 
mandamus jurisdiction so narrowly.
            
Further, a review of our precedent reveals its support for our—and not 
Justice Willett’s—interpretation of our mandamus jurisdiction. We decline to 
overrule Deramus because the general 
proposition in Deramus is still valid. In Deramus, we stated that a petition for writ of habeas 
corpus was the only manner for challenging a contempt judgment, but left open 
the possibility of the availability of mandamus in a situation where habeas 
would prove inadequate. See Deramus, 333 S.W.2d at 827. Seizing on that exception, we have 
exercised our mandamus jurisdiction in situations of fine-only contempt where, 
under the constraints of the habeas statute, we lacked habeas jurisdiction. 
See Rosser, 902 S.W.2d at 962; In re 
Long, 984 S.W.2d at 625; Tex. 
Gov’t Code § 22.002(e) (authorizing this Court to issue a writ of habeas 
corpus “when a person is restrained in his liberty” by virtue of 
violating a previous order) (emphasis added). Here, as in Rosser and 
In re Long, the habeas statute does not permit our exercise of habeas 
jurisdiction, but it does not follow that we may not exercise our broader 
mandamus jurisdiction. In Rosser and In re Long, we declined to 
read the limitations in our habeas statute as a legislative prohibition against 
our exercise of mandamus jurisdiction. We decline to do so here as 
well.
            
We finally observe that whatever one’s view of our bifurcated judicial 
system, it is the system established by the people of this state. The bifurcated 
system, pursuant to our Constitution, establishes this Court as the court of 
final resort for civil matters, see Tex. Const. art. V, § 3, and the Court of 
Criminal Appeals as the court of final resort for criminal matters, see id. 
art. V, § 5. The instant 
case—a business dispute in which a party to the case was held in contempt for 
lying during a deposition—is unquestionably civil, and not criminal, in nature. 
A case of criminal contempt does not depend on whether the underlying case is 
civil or criminal, see generally Ex parte Werblud, 536 S.W.2d at 545–46, nor require the same 
procedural safeguards as those required in a criminal case, see id. at 547 (noting that contempt statute is exempted from 
requirements of a jury trial). Under our bifurcated system, it is legal, as well 
as logical, for this Court to exercise its mandamus jurisdiction in a civil case 
where the Court of Criminal Appeals has refused to exercise its jurisdiction and 
has deferred to this Court. While a man’s very liberty is at stake, Justice 
Willett focuses on policy issues concerning our bifurcated judicial system that 
are beyond the purview of the case before us today and are best left to the 
people of Texas and their elected legislative officials. The people have 
entrusted this Court with expertise over civil matters and our sister court with 
the same over criminal matters. We honor this decision in exercising our 
jurisdiction over this civil case today.
            
IV. Conclusion
            
Because the 
trial court abused its discretion in confining Reece for criminal contempt for 
acts of perjury occurring during a deposition and Reece has no adequate remedy 
by appeal, we conditionally grant the writ of mandamus and order the trial court 
to vacate the May 29, 2009, and June 24, 2009, contempt judgments against Reece. 
We are confident the trial court will comply, and our writ will issue only if it 
does not.
 
                                                                                                                                                
            
____________________________
                                                                                                                                                            
Eva M. Guzman
                                                                                                                                                            
Justice
 
 
OPINION DELIVERED: May 27, 2011






[1] In the 
underlying suit, SB accuses Reece and codefendants of diverting business from SB 
by secretly convincing SB’s customers to place orders directly with SB’s 
suppliers, enabling Reece and his codefendants to keep all profits rather than 
sharing the profits with SB as required by their contracts.

[2] The 
motion for sanctions was a renewed motion. SB had previously moved for sanctions based on what it suspected was the defendants’ lack 
of credibility, but it did not have proof of any of the defendants’ 
misrepresentations or misstatements until Reece’s admission. The trial court 
twice carried this motion.

[3] Texas 
courts of appeals only have habeas jurisdiction in situations where a relator’s restraint of liberty arises from a violation of an 
order, judgment, or decree previously made by a court or judge in a civil case. 
Tex. Gov’t Code § 22.221(d).

[4] The 
motion for reconsideration is still pending at the Court of Criminal Appeals, 
presumably because that court is awaiting this Court’s ruling on Reece’s 
mandamus petition.

[5] There 
are limits, however, to a trial court’s ability to summarily hold someone in 
direct contempt. See Ex parte Knable, 818 
S.W.2d 811, 813 (Tex. Crim. App. 1991) (observing that summary punishment for 
direct contempt flows from both the court’s observation of the conduct and the 
exigency of the situation); In re Bell, 894 S.W.2d at 129 
(same).

[6] See 
also In re Coppock, 277 S.W.3d 417, 419 
(Tex. 2009) (orig. proceeding) (noting that civil contempt is the process by 
which a court can exert its authority to compel obedience with one of its 
orders).

[7] See, 
e.g., Ex parte Gonzalez, 238 S.W. 635, 636 (Tex. 1922) (orig. 
proceeding) (the purpose of contempt is to either “compel due decorum and 
respect in its presence” (i.e., direct contempt) or compel “due obedience to its 
judgments, orders, and process” (i.e., constructive contempt)); see also In 
re Bell, 894 S.W.2d at 132 (Jones, J., concurring) (noting that while direct 
contempt rests on a direct affront to the authority or dignity of a court, 
regardless of the existence of an order or decree of that court, in constructive 
contempt, “‘but for the order or decree violated, the allegedly 
contemptuous conduct would not constitute contempt’”) (quoting Wendell A. Odom 
& Lang A. Baker, Direct and Constructive Contempt, An Attempt to Clarify 
the Confused History of a Confused Distinction in the Jurisprudence of 
Texas, 26 Baylor L. Rev. 147, 
150 (1974)).

[8] But 
see Ex parte Arnold, 503 S.W.2d 529, 533–34 (Tex. Crim. App. 1974) 
(suggesting constructive contempt is limited to violations of orders, but going 
on to state that constructive contempt would be available in a situation where a 
defamatory publication is calculated to interfere with the administration of 
justice).

[9] The 
statute also provides that punishment for criminal contempt may not exceed $500 
or confinement for more than six months in jail, see Tex. Gov’t Code § 21.002(b), but 
provides no similar limits for civil contempt, see id. § 21.002(e). 
The Federal Rules of Criminal Procedure provide more detailed instructions for 
the procedures a court must utilize in holding a person in criminal contempt. 
Fed. R. Crim. P. 42.

[10] Though 
not at issue in this case, obstruction includes the flagrant disregard of a 
court order. See Ex parte Taylor, 807 S.W.2d at 750. We have also 
previously observed that intentional disrespect is a proper alternative ground 
for contempt, Ex parte Norton, 191 S.W.2d at 714, though this ground is 
invariably limited to situations of direct contempt, such as when an attorney 
deliberately insults a judge during open proceedings.

[11] Though 
an unpublished opinion, it is helpful to compare Ex parte Gibson to the 
factual scenario of In re Wightman. No. 05-98-01697-CV, 
1998 WL 877494, at *1 (Tex. App.—Dallas Dec. 17, 1998, orig. proceeding) (not 
designated for publication). In In re 
Wightman, a plaintiff’s attorney was held in contempt for mailing a 
judge a letter not only questioning the judge’s competence and corruptibility, 
but also threatening suit against the judge if he did not rule as the attorney 
wished. In In re Wightman, unlike Ex 
parte Gibson, the attorney’s conduct obstructed court operations by 
attempting to coerce the judge to rule as he wished.

[12] We 
also note that while confinement is a possibility in a criminal prosecution for 
perjury just as it is in a contempt proceeding, the procedural distinctions 
between the two are important: although a court is required to employ various 
procedural safeguards similar to those found in a criminal prosecution in a 
constructive criminal contempt case, these procedures do not duplicate a 
criminal trial. Namely, a person charged with criminal contempt is not entitled 
to a trial by jury. See Tex. 
Gov’t Code § 21.002(b); Ex parte Werblud, 536 S.W.2d at 547 (observing that the Texas 
contempt statute authorizes punishment for not more than six months, falling 
within the definition of “petty” contempt that is exempted from the requirements 
of a jury trial); see also Muniz v. Hoffman, 422 U.S. 454, 475–76 (1975). 
On the other hand, under the criminal procedures of this state, a person charged 
with a crime is entitled to have the person’s case tried by a jury. Tex. Code Crim. Proc. arts. 1.05, 
1.12. When a trial court possesses the ability to hold a person in 
contempt and confine him for perjury, the alleged perjurer lacks any possibility 
of having his case tried before a jury, as would be his right in a criminal 
prosecution. See Matusow, 229 
F.2d at 343 (observing that allowing contempt for perjury “permit[s] too great 
inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave 
determination of guilt to a judge rather than a jury”).

[13] Of 
course, under our rules, a person may be held in contempt for failure to appear, 
to be sworn, or to answer questions during a deposition after being directed to 
do so by the trial court. Tex. R. Civ. 
P. 215.2. The federal rules contain a similar provision. See Fed. R. Civ. P. 37(b)(1).

[14] Reece 
also argues the contempt judgments are void because the show cause order did not 
afford him due process. Because we hold the contempt judgments are void on other 
grounds, we need not reach this issue.

[15] As 
mentioned previously, the courts of appeals possess the same habeas jurisdiction 
as this Court. See Tex. Gov’t Code § 22.221(d).

[16]
 See In re M.J., 227 
S.W.3d 786, 793 (Tex. App.—Dallas 2006, pet. denied [mand. denied]) (denying mandamus petition since contempt 
order involved confinement and observing that contempt order involving 
confinement must be challenged by writ of habeas corpus, while contempt orders 
not involving confinement are only reviewable through mandamus); Cadle Co. v. Lobingier, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 
2001, pet. denied) (en banc) (“A contempt judgment is reviewable only via a 
petition for writ of habeas corpus (if the contemnor is confined) or a petition 
for writ of mandamus (if no confinement is involved).”); In re Zenergy, Inc., 968 S.W.2d 1, 11–12 (Tex. App.—Corpus 
Christi 1997, orig. proceeding) (concluding habeas—and not mandamus—is the 
proper vehicle for challenging contempt order assessing both fine and 
confinement).
 

[17] For a 
general review of the history of original jurisdiction in our state’s high 
courts, see George E. Dix, Appellate Review by Mandamus and 
Prohibition in Texas Criminal Litigation, 17 Tex. Tech L. Rev. 75, 80–89 (1986).

[18] For 
example, in a case somewhat similar to this one, this Court dismissed a 
contemnor’s habeas petition for want of jurisdiction where the contemnor was 
found to have given false testimony during court proceedings. Ex parte 
Morris, 349 S.W.2d at 100–01. In doing so, we stated that the habeas statute 
limited the Court’s habeas power to restraints brought about by an order or 
process of a court issued because of a violation of an order, judgment, or 
decree in a civil case. Id. We concluded that “[t]o say that [the habeas 
statute] empowers us to act whenever the restraint grows out of proceedings in a 
civil case, it would be necessary to disregard the [other language in the 
statute].” Id. See also, e.g., Ex parte Hofmayer, 420 S.W.2d 137, 138 (Tex. 1967) (orig. 
proceeding) (declining to exercise habeas jurisdiction over juvenile’s challenge 
of his confinement in boys’ school and noting that the habeas statute did not 
allow us to do so even though the juvenile’s case was civil); Ex parte 
Jackson, 252 S.W. at 149 (observing that the habeas statute “limits our 
power in the language just stated; that is, we may inquire only into the 
restraint brought about by an order or process of the court issued because of 
the violation of some order, judgment, or decree in a civil case”). But see 
Ex parte Fisher, 206 S.W.2d 1000, 1005 (Tex. 1947) (orig. proceeding) 
(upholding a contempt judgment arising from an attorney arguing with a judge in 
open court without discussion of the statutory limits on this Court’s habeas 
jurisdiction); Ex parte Calhoun, 91 S.W.2d 1047, 1048–49 (Tex. 1936) 
(orig. proceeding) (dismissing habeas jurisdiction because of contemnor’s lack 
of restraint, but finding Court possessed jurisdiction to consider petition in 
civil contempt case without discussion of whether the contemnor’s acts—described 
by the trial court as “contemptible”—involved the violation of a court 
order).
 

[19] 
See, e.g., Ex parte Jones, 294 S.W.2d 111, 112 (Tex. Crim. 
App. 1956) (dismissing habeas petition arising from contempt proceeding due to 
contemnor’s violation of a court order because “[t]he many questions raised 
appear to be civil in nature” and “this Court will exercise its jurisdiction 
only upon a showing that the civil courts have declined to pass upon the 
legality of the confinement of relators under the 
contempt decree”); Ex parte Wolf, 34 S.W.2d at 277–78 (declining to 
reinstate habeas petition since the contempt proceeding arose from the alleged 
contemnor’s failure to observe an order in a civil case and directing the 
contemnor to this Court); Ex parte Alderete, 
203 S.W. 763, 764 (Tex. Crim. App. 1918) (“[I]n a contempt proceeding where it 
appears that it grows out of an alleged failure to observe an order in a civil 
cause this court will refuse to grant the writ relegating the party to his 
remedy in the Supreme Court.”); Ex parte Zuccaro, 162 S.W. at 845–46 (dismissing habeas petition 
without prejudice where relator was confined for 
violation of an injunction in a civil case because “it was intended that the 
Supreme Court should first be given an opportunity to take jurisdiction in such 
matters as are provided for by [the statute granting this Court habeas corpus 
jurisdiction]”).

[20] For 
example, in Ex parte Duncan, the contemnor was held in contempt due to 
certain statements made in a brief in a civil case. 182 S.W. 
313, 313 (Tex. Crim. App. 1916). Apparently the contemnor first filed a 
habeas petition with the Court of Criminal Appeals, which declined to exercise 
its jurisdiction until it was first presented to this Court as the Court of 
Criminal Appeals believed this Court had jurisdiction given the underlying 
case’s civil nature. Id. One of the justices of this Court apparently 
endorsed on the contemnor’s habeas petition that we lacked jurisdiction, but 
that the Court of Criminal Appeals did possess jurisdiction under the 
Constitution to issue the writ. Id. Only then did the Court of Criminal 
Appeals exercise its habeas jurisdiction and release the contemnor from 
confinement. Id. at 314. See also Ex parte 
Cvengros, 384 S.W.2d 881, 882 (Tex. Crim. App. 
1964) (observing that “[a]s a general practice, where there is reason to believe 
that the application falls within the area of concurrent jurisdiction, the Court 
of Criminal Appeals will decline to act until the Supreme Court has decided 
whether the case comes within its restricted habeas corpus 
jurisdiction”).

[21] 
Similarly, we have exercised our mandamus jurisdiction in situations 
where a trial court improperly denies a motion to dismiss premised on an 
inadequate expert report under former article 4590i. See Tex. Rev. Civ. Stat. art. 4590i (repealed 2003). 
Article 4590i did not provide for interlocutory appeal of such a denial, but in 
In re McAllen we held mandamus was 
available to contest an improper denial of a challenge to an inadequate expert 
report to fill this statutory gap. In re McAllen, 275 
S.W.3d at 461–62. The Legislature, in enacting Texas Civil Practice and 
Remedies Code section 74.351, subsequently allowed for interlocutory appeal in 
such a situation. See Tex. Civ. 
Prac. & Rem. Code § 74.351; see also id. § 51.014.

[22] See 
generally 6 Roy W. McDonald 
& Elaine A. Grafton Carlson, McDonald & Carlson Texas Civil 
Practice § 35:2 (2d ed. 2010).

[23] 
Indeed, in Stevenson, the petitioner initially filed his mandamus 
petition with this Court, but we transferred the case to the Court of Criminal 
Appeals so that they could determine if they had jurisdiction to issue writs of 
mandamus to compel speedy trials concurrently with this Court. Stevenson, 
561 S.W.2d at 846. Once the Court of Criminal Appeals 
determined it had concurrent jurisdiction to issue writs of mandamus in these 
cases, this Court discontinued its practice of hearing these sorts of petitions. 
See Dix, supra note 17, at 87–88.