**In the Interest of M.J., N.J., and T.J., Minor Children.**

Nos. 05–05–00682–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 2006.

Rehearing Overruled Sept. 14, 2006.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, for appellant

Brian L. Webb, Webb & Ackels, P.C., Dallas, for appellee.

Before Chief Justice THOMAS and Justices WHITTINGTON and WRIGHT.

## OPINION

Opinion by Chief Justice THOMAS.

Mahbub Jamil Ananta (Father) challenges the trial court's modification order naming Sharmeen Jamil Parvez (Mother) the sole managing conservator of the parties' three children, contending the trial court abused its discretion by basing its ruling on factual findings that are not supported by the evidence. Father also petitions for a writ of mandamus directing the trial court to vacate its contempt order. We affirm the trial court's order and deny mandamus relief.

## Factual and Procedural Background

Father and Mother divorced in Dallas County on March 9, 2001. The divorce decree named Father sole managing conservator of the parties' three children and gave him the right to establish the residence of the children. Mother was named possessory conservator and granted standard possession.[1] The decree also contained a residence restriction that required the children to reside in Dallas County or contiguous counties as long as Mother resided in Dallas County.[2]

Around March 22, 2001, Mother went to California to visit her father, who was recovering from heart surgery, and to obtain a reliable car. On April 9 or 10, 2001, Father left Dallas with the three children for Bangladesh, India. Upon returning to Dallas on April 14 or 15, Mother could not find Father or the children. Mother's brother then informed her that Father had sent Mother a letter to the brother's address in California, explaining that Father had taken the children to Bangladesh because his mother was sick. Although the note could be interpreted to read that both Father and the children would be returning in a few weeks, Father intended to convey that only he would return, and the children would remain in Bangladesh permanently.

Mother went to Bangladesh in November 2001 to see the children. Throughout her four-month visit, Mother was allowed only limited visitation with the children.

---

1. *See* Tex. Fam.Code Ann. § 153.311–.317 (Vernon 2005).

2. The decree provided the residence restriction could be changed by order of the trial court or by written agreement of the parties filed with the court.

In December 2002, Mother returned to Bangladesh and attempted to obtain access to the children through the Bangladeshi court system. On that visit, Mother was able to see the children only briefly in the courtroom. Mother traveled to Bangladesh in December 2003 and visited the children twice at Father's house. However, Father's family videotaped and supervised the visits. Father also brought one child to visit Mother at her parents' house, but stayed in the house throughout the visit. In a final attempt at visitation, Mother arranged for the children to fly to the United States for her extended summer possession from June 15 through July 27, 2004. Although Mother sent notice as required by the divorce decree and made travel arrangements, Father failed to deliver the children to the airport.

In Bangladesh, the children were unable to converse or visit routinely with Mother. When interviewed by two United States Embassy officials, the children stated they "talk to their father regularly on the phone but are not allowed to talk to their mother." Because Father makes frequent lengthy trips to the United States to work and appear at court for this case, the children are often left with Father's extended family in Bangladesh.

On October 15, 2004, Mother filed a motion for enforcement and order to appear, seeking to have Father held in contempt for his violations of the divorce decree. On January 31, 2005, Mother filed a motion to modify, requesting she be named sole managing conservator of the children. Both motions were tried to the court on March 22–23, 2005. Both Mother and Father were present at trial, but the children remained in Bangladesh.

The trial court found that Mother resided in Dallas County when Father moved the children to Bangladesh and that Father violated the decree by moving the children to Bangladesh and by refusing to present the children for Mother's extended summer possession in June 2004. The trial court held Father in contempt and sentenced him to seven days' confinement for each violation of the decree. The trial court further ordered Father to remain confined until the children were returned to the United States.[3] Father was also assessed a $100 fine for each violation and ordered to post a $10,000 bond to secure his compliance with the court's order. Finally, the trial court determined it was in the children's best interest to name Mother sole managing conservator.

Father appealed the trial court's order naming Mother sole managing conservator, claiming the trial court abused its discretion by basing its decision to modify conservatorship on findings of fact that lack evidentiary support. Father also filed a petition for writ of mandamus, requesting this Court direct the trial court to vacate the contempt order because (1) the trial court's findings that he violated the divorce decree by moving the children to Bangladesh and by refusing to surrender the children for Mother's extended summer possession are not supported by the evidence and (2) holding him in criminal contempt violated his constitutional right not to be placed in jeopardy twice for the same offense.[4]

3. Father arranged for the children to return to the United States after he was held in contempt.

4. Mother had filed previous motions to enforce based on Father's moving the children to Bangladesh. Although the transcripts of any hearings on the motions are not in the record, Father's counsel represented to the trial court that witnesses had been sworn on the prior motions. The trial court found that all prior motions filed by Mother were dismissed without prejudice.

## Standard of Review

We review the trial court's decision to modify conservatorship under an abuse of discretion standard. *Seidel v. Seidel,* 10 S.W.3d 365, 368 (Tex.App.-Dallas 1999, no pet.). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990) (per curiam); *Pickens v. Pickens,* 62 S.W.3d 212, 214 (Tex.App.-Dallas 2001, pet. denied). Legal and factual sufficiency of evidence challenges are not independent grounds for asserting error under the abuse of discretion standard, but they are relevant factors in assessing whether the trial court abused its discretion. *Pickens,* 62 S.W.3d at 214; *Dunn v. Dunn,* 177 S.W.3d 393, 396 (Tex.App.-Houston [1st Dist.] 2005, pet. denied).

We review findings of fact entered in a bench trial for legal and factual sufficiency of the evidence by the same standards used to review jury findings. *Dunn,* 177 S.W.3d at 396. In a legal sufficiency review, we view the evidence in a light favorable to the finding, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the factual sufficiency of evidence, we examine all the evidence and set aside a finding only if it is so contrary to the evidence as to be clearly wrong and unjust. *Cameron v. Cameron,* 158 S.W.3d 680, 683 (Tex.App.-Dallas 2005, pet. denied).

## Application of Law to the Facts

Father contends the trial court abused its discretion because the evidence is legally and factually insufficient to support the court's findings that:

- Mother resided in Dallas County on the date Father removed the children to Bangladesh;
- the children's living environment in Bangladesh might endanger their physical health or impair their social development; and
- Father refused or limited access to the children.

Father also argues the trial court's conclusion that it is in the best interest of the children to name Mother sole managing conservator is contrary to the law and to the facts.

### A. Mother's Residence When Children Were Moved

Father first complains there is no or insufficient evidence to support the trial court's finding that Mother resided in Dallas County when he moved the children to Bangladesh. Mother testified that at the time of the divorce, she lived in apartment 1133 at 10000 Walnut Lane in Dallas. Because she believed Father had access to the apartment, Mother sometimes stayed with a friend in apartment 2079 in the same complex. Mother traveled to California on March 21 or 22, 2001 to see her father, who was recovering from heart surgery, and to obtain a reliable car. Mother took only a small overnight bag on her trip and left her furniture and other belongings in the apartments in Dallas.

Mother testified she returned to Dallas on April 14 or 15, 2001. George Peccoraro and Grace Miller, residents of the same apartment complex at 10000 Walnut Lane, both confirmed they knew Mother was taking a trip to California and that Mother returned to the apartment complex in April 2001. Mother, Peccoraro, and Miller all testified Mother lived in the apartment complex for some period of time after the California trip. Mother continued to re-

ceive mail at the Dallas apartments throughout 2001.

Father testified that Mother moved out of her apartment in Dallas in February 2001 and told him that she was moving to California permanently. Father testified Mother told the apartment manager to send the security deposit to an address in California. Father's attorney's legal assistant stated Mother told her in a telephone conversation to send the divorce decree to "her new address" in California. Mother, however, testified that she told the assistant to send the decree to her brother's address and that she had not moved to California. Father testified he told Mother in a telephone conversation on April 8 or 9 that he and the children were moving to Bangladesh permanently, and Mother agreed to the move.

It is the role of the trial court to resolve conflicts in the evidence. Viewing the evidence in a light favorable to the factual finding, we conclude the evidence is legally sufficient to support the trial court's finding that Father moved the children to Bangladesh while Mother was a resident of Dallas County. Further, the trial court's finding that Mother was a Dallas County resident at the time Father moved the children to Bangladesh is not so contrary to the evidence that it is clearly wrong and unjust.

### B. Children's Emotional and Physical Well–Being

■ Father next asserts there is no or insufficient evidence to support the trial court's finding that living in Bangladesh might endanger the children's physical health or significantly impair the children's social development. It was uncontroverted that Father spends significant time in the United States while the children remain in Bangladesh with Father's extended family. It was also uncontroverted that

Mother had limited contact with the children from April 2001 until Spring 2005. The social study ordered by the trial court concludes that the children likely feel abandoned by both parents and need regular and consistent time with Mother without Father's interference.

Father claims the children are living an upper-middle class lifestyle in Bangladesh, but would live in reduced circumstances in the United States due to Mother's financial condition. He contends Mother works only part time and has limited financial resources. However, Mother testified that she is working part time and attending school full time. She is married to a man with a steady job and two masters' degrees. They purchased a four-bedroom home to share with the children.

We conclude the evidence is legally sufficient to support the trial court's finding that living in Bangladesh with limited contact with both Mother and Father could endanger the children's physical health or significantly impair the children's social development. Further, the trial court's finding is not so contrary to the evidence that it is clearly wrong and unjust.

### C. Limited Access to Children

■ Father also claims there is no or insufficient evidence to prove he refused or limited access to the children. Mother had the right under the divorce decree to standard possession of the children. Mother testified she did not know Father was moving the children permanently to Bangladesh in April 2001. Mother traveled to Bangladesh in 2001, 2002, and 2003 to see the children. In 2001, she was allowed to see the children for "three or four weekends" during her four-month stay. In 2002, Mother saw the children only briefly in a Bangladesh courtroom. In 2003, Mother saw the children on two days for short periods of time at Father's house

while Father or his relatives videotaped the visits. Father also brought one of the children to Mother's parents' house for a short visit. Mother has had only limited telephone contact with the children.

In 2004, Mother attempted to exercise her extended summer vacation under the divorce decree by purchasing airline tickets for the children, designating her father as a competent adult to accompany the children on the trip, and notifying Father of the itinerary. Father did not deliver the children to the airport for Mother's summer visitation.

Father testified that Mother consented to his relocating the children to Bangladesh prior to the move. He testified he brought the children to see Mother every weekend during her four-month trip to Bangladesh in 2001, but became concerned when Mother threatened to take the children back to the United States with her. Father contends he was not involved in restricting Mother's access to the children in 2002 because he was in the United States responding to criminal charges that he removed the children from the United States in violation of the court's order. Although during certain periods of time Mother called the children almost every day, for several years Mother refused to provide an address or telephone number at which he or the children could reach her. Father videotaped the visits in 2003 due to Mother's claims he was denying her access to the children. When Mother asked for privacy, he stopped filming. He claims his two younger children did not want to visit Mother at her parents' house. He admits he stayed at Mother's parents' house while his oldest child visited her.

Father testified he did not deliver the children to the airport for Mother's extended summer visitation in 2004 because he had received an itinerary showing the children were traveling to Turkey, as well as the itinerary to the United States. He was concerned that if Mother had possession of the children, she would disappear with them. Further, the flights chosen by Mother required an equipment change, a violation of the divorce decree.

The social study ordered by the trial court and a letter to Mother from the Department of State Bureau of Consular Affairs confirm the children told United States Embassy officials that they talk to their father on the telephone, but are "not allowed" to talk to their mother. Mother sought assistance from both the American and Bangladeshi court systems to help her see the children, which leads to a reasonable conclusion that she had trouble with visitation even when she traveled halfway around the world to see the children. Further, Father and his family provided Mother little or no privacy with the children during many of her visits, forcing her to visit the children in a hostile and unnatural environment.

Viewing the evidence in a light favorable to the finding, the evidence is legally sufficient to support the trial court's finding that Father refused or limited Mother's access to the children. Further, the finding is not so contrary to the evidence as to be clearly wrong and unjust.

### D. Best Interest of the Children

Father finally complains the trial court's conclusion that it is in the children's best interest to name Mother sole managing conservator is contrary to the law and the facts. The determination of what is in the best interest of the child is "intensely fact driven." *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex.2002). Because a trial court is in the best position to observe the demeanor and personalities of the witnesses and to assess the factors that cannot be discerned by merely reading the record, a trial court's determination of the

best interest of the child will be reversed only upon a determination of abuse of discretion. *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.). The trial court does not abuse its discretion if there is some probative and substantive evidence to support the trial court's decision or if the evidence is conflicting. *In re A.S.M.*, 172 S.W.3d 710, 717 (Tex.App.-Fort Worth 2005, no pet.); *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex. App.-El Paso 2004, no pet.).

Texas public policy encourages courts to "assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child." TEX. FAM.CODE ANN. § 153.001 (Vernon 2005). The trial court found that (1) Father moved the children to Bangladesh in violation of the divorce decree; (2) Father refused or restricted Mother's access to the children; and (3) remaining in Bangladesh may endanger the children's health or significantly impair their social development. Further, Father spends an extensive amount of time in the United States and requiring him to return the children to the United States will not prevent him from continuing his relationship with them. The trial court did not abuse its discretion in concluding it was in the best interest of the children to name Mother sole managing conservator.

Accordingly, we resolve Father's sole issue against him and affirm the trial court's modification order.

## Petition for Mandamus

In his petition for writ of mandamus, Father seeks relief from the trial court's contempt order. The trial court held Father in contempt for violating the decree by (1) removing the children to Bangladesh and (2) failing to surrender the children for Mother's extended possession in June 2004. The trial court sentenced Fa-

ther to seven days of confinement on each violation, to be served concurrently, and ordered him to remain incarcerated until the children were returned to the United States from Bangladesh. Father was also fined $100 per violation and required to post a $10,000 bond to secure compliance with the order.

■ Contempt orders may only be attacked collaterally. *Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824, 827 (1960) (orig. proceeding). Contempt orders involving confinement must be challenged by writ of habeas corpus. *Id.* at 827; *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.-Fort Worth 2001, pet. denied). On the other hand, contempt orders that do not involve confinement may be reviewed only through mandamus. *In re Long*, 984 S.W.2d 623, 625 (Tex.1999) (orig. proceeding) (per curiam); *Rosser v. Squier*, 902 S.W.2d 962, 962 (Tex.1995) (orig. proceeding) (per curiam).

■ Relying on *Long*, Father asserts that because he is no longer incarcerated, he is entitled to seek relief by mandamus. However, the contempt order in *Long* did not involve confinement. *Long*, 984 S.W.2d at 624–25. A contempt judgment that involves confinement must be challenged by habeas corpus. *Deramus*, 333 S.W.2d at 827; *Cadle Co.*, 50 S.W.3d at 671; *In re Zenergy, Inc.*, 968 S.W.2d 1, 12 (Tex.App.-Corpus Christi 1997, orig. proceeding) (relief from contempt order assessing both fines and confinement must come through habeas corpus). The contempt order in this case involved confinement and may not be challenged through a petition for writ of mandamus.

Therefore, we deny Father's petition for writ of mandamus.

## Conclusion

The trial court did not abuse its discretion when it concluded it was in the chil-

dren's best interest to name Mother sole managing conservator. Therefore, we affirm the trial court's modification order. Further, because Father was required to challenge the trial court's contempt order by writ of habeas corpus, his petition for writ of mandamus is denied.

