

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00015-CV

———————————————————

IN THE INTEREST OF E.I., A CHILD

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 22-10324-481

Before Womack, Wallach, and Walker
Memorandum Opinion on En Banc Reconsideration by Justice Womack

## MEMORANDUM OPINION ON EN BANC RECONSIDERATION

### I. INTRODUCTION

After this court issued its original memorandum opinion, Appellant T.J.S. (Father) filed a motion for en banc reconsideration. Although we hereby deny that motion, we withdraw our October 24, 2024 memorandum opinion and judgment. We substitute this memorandum opinion for the original and issue a new judgment with today's date.

This appeal arises from a suit affecting the parent–child relationship (SAPCR). Father appeals from the trial court's order adjudicating that he is the father of E.I.[1] and determining his parental rights and obligations with respect to the child. In seven issues, Father argues that the trial court (1) erred by holding him in contempt and placing him in the sheriff's custody for failing to comply with a court order; (2) exhibited judicial bias against him, thereby depriving him of a fair trial; (3) abused its discretion by ordering him to pay child support based on his earning potential as opposed to his actual income at the time of trial; (4) abused its discretion by appointing H.I. (Mother) as E.I.'s sole managing conservator based on legally and factually insufficient evidence; (5) abused its discretion by restricting his access to, and possession of, E.I.; (6) abused its discretion by admitting into evidence certain of

---

[1]We use initials to refer to the child and her family members. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Mother's exhibits that she had purportedly failed to properly disclose; and (7) erred by awarding Mother attorney's fees. We will affirm.

## II. BACKGROUND

Father, who was then a full-time college student, and Mother, who was then a hair stylist living with her parents, began dating in September 2020. The couple had a volatile relationship marked by "very high highs" and "very low lows."

One of the lows occurred on Halloween of 2021 when Mother and Father had an altercation at Father's home. Mother testified that she had decided to leave the house after Father began showing signs of aggression. According to Mother, as she was sitting on the curb outside the house, Father "charged at [her] in a car," nearly running over her feet, and then threw open the door and slammed it into her. She testified that he then got on top of her and put his legs on her arms and his hands over her mouth "to where [she] couldn't breathe." According to Mother, when they arrived back at Father's house, he "pushed [her] all down the hall" and slammed her into the backdoor. The police were called and Mother was taken to the police station, but Father was not arrested.

Despite their tumultuous relationship, Father and Mother decided to have a child together. On January 31, 2022, they found out that Mother was pregnant. According to Mother, that night, when she mentioned the possibility of giving the child up for adoption, Father became angry, grabbed her arm, and threatened to kill her if she left.

In February 2022, Mother "blocked" Father from being able to contact her and ended their relationship because, among other reasons, she believed that Father had been unfaithful to her. She later briefly unblocked Father to inform him that she believed the police were "going forward with charges" stemming from the Halloween incident.[2]

Mother gave birth to E.I. in September 2022. But she did not notify Father or list him on the birth certificate.

In December 2022, Father, acting pro se, commenced this SAPCR by filing a petition to adjudicate parentage. Mother filed a counterpetition. Court-ordered genetic testing confirmed Father's relationship to E.I., and a temporary-orders hearing was held before a visiting judge in March 2023.

The temporary-orders hearing ended prematurely after Father—who was still acting pro se—became frustrated by the visiting judge's insistence that he follow the rules of evidence and procedure, argued with the judge, and left the courtroom. Following the hearing, the trial court entered temporary orders naming Mother E.I.'s temporary sole managing conservator and Father a temporary possessory conservator. Under the temporary orders, Father was required to undergo a psychological evaluation, complete a battering intervention and prevention program (BIPP), and

---

[2]Father testified that he was never actually charged with any offense based on the Halloween incident.

4

attend a coparenting class. He was not awarded any rights to possess or access E.I.[3]

The trial court denied Father's motion to modify the temporary orders, and they remained in effect until final trial.

After both sides filed motions to compel, a hearing was held in August 2023. Following this hearing, the trial court ordered Father—who was now represented by counsel—to respond to certain of Mother's discovery requests; awarded Mother $385 in attorney's fees; and ordered Father to bring cash or a cashier's check in this amount to the final trial.

The trial court commenced a two-day bench trial on August 31, 2023. At the start of trial, the trial court held Father in contempt for failing to bring cash or a cashier's check in the amount of $385 as ordered. The trial court ordered that Father be confined until he delivered the funds to the court, and he was placed in a holding cell. After a recess, Father's attorney delivered the funds to the court, Father was released from custody, and the trial commenced.

Following the trial, the trial court signed a final order appointing Mother E.I.'s sole managing conservator and appointing Father a possessory conservator. Although the order awarded Father no immediate rights to possess or access E.I., it provided that he would be granted supervised periods of possession and access upon his timely

---

[3]The temporary orders provided that if Father completed the required BIPP programming and coparenting class and furnished proof of his address to Mother, the court would consider granting him supervised access to E.I.

completion of (1) BIPP programming, (2) parenting classes, and (3) a psychological evaluation. The trial court awarded Mother child support based on Father's prospective employment as an engineer. Further, the trial court awarded Mother $29,677.77 in attorney's fees (plus conditional appellate attorney's fees) and ordered Father to reimburse her for half of her prenatal and neonatal expenses.

At Father's request, the trial court filed findings of fact and conclusions of law. This appeal followed.

## III. DISCUSSION

As noted, Father raises seven issues on appeal. But for the reasons set forth below, none of these issues provides a valid basis for reversing the trial court's final order.

## A. Contempt

In his first issue, Father contends that the trial court abused its discretion by holding him in contempt and placing him in the sheriff's custody for failing to comply with its order to bring $385 to the final trial. However, we lack jurisdiction to review a contempt order on direct appeal. *Tex. Animal Health Comm'n v. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *In re B.C.C.*, 187 S.W.3d 721, 723 (Tex. App.—Tyler 2006, no pet.); *In re A.C.J.*, 146 S.W.3d 323, 326 (Tex. App.—Beaumont 2004, no pet.); *In re T.L.K.*, 90 S.W.3d 833, 841 (Tex. App.—San Antonio 2002, no pet.); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 672 (Tex. App.—Fort Worth 2001, pet. denied) (en banc). Rather, a contempt order must be challenged through an original proceeding. *In re*

*B.A.C.*, 144 S.W.3d 8, 11 (Tex. App.—Waco 2004, no pet.); *see Tracy v. Tracy*, 219 S.W.3d 527, 530 (Tex. App.—Dallas 2007, no pet.) ("Contempt orders involving confinement may be reviewed by writ of habeas corpus; contempt orders that do not involve confinement may be reviewed only through mandamus." (citing *In re M.J.*, 227 S.W.3d 786, 793 (Tex. App.—Dallas 2006, pet. denied) (orig. proceeding))).

Accordingly, we dismiss Father's first issue for lack of jurisdiction.

## B. Judicial Bias

In his second issue, Father contends that the trial court deprived him of a fair trial and due process by exhibiting judicial bias. We disagree.

### 1. Applicable Law

All parties have a right to a fair trial before an impartial judge. *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.). But only in the rarest of circumstances will judicial rulings show favoritism or antagonism to the degree necessary to conclude that the trial was not fair or that the judge was not impartial. *Id.*; *see also Haynes v. Union Pac. R.R. Co.*, No. 01-18-00181-CV, 2020 WL 425130, at *11 (Tex. App.—Houston [1st Dist.] Jan. 28, 2020, pet. dism'd). Indeed, when presented with allegations of judicial bias, the United States Supreme Court has written that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion" and that the opinions a judge forms during a trial do not call into question a judge's bias or partiality "unless they display a deep-seated favoritism or

antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994).

Similarly, a judge's critical, disapproving, or even hostile remarks during trial to counsel, the parties, or their cases do not ordinarily support a bias or partiality challenge. *Id.*, 114 S. Ct. at 1157. Further, "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even . . . judges, sometimes display" do not establish bias or partiality. *Id.* at 555–56, 114 S. Ct. at 1157. "A judge's ordinary efforts at courtroom administration— even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556, 114 S. Ct. at 1157.

As with many other alleged errors, to preserve a partiality complaint, a party generally must object to the trial court's alleged improper conduct or comment when it occurs. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam); *Markowitz v. Markowitz*, 118 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g); *see also Haynes*, 2020 WL 425130, at *9. However, the Texas Supreme Court has recognized that claims of judicial bias are not waived by a failure to object in the trial court if "the conduct or comment cannot be rendered harmless by proper instruction." *Dow Chem. Co.*, 46 S.W.3d at 241. As we have explained previously, "[t]his 'limited,' 'narrow,' and 'rare' exception to the preservation-of-error requirements in civil cases essentially requires a harm analysis— the error 'probably caused the rendition of an improper judgment'—to determine if

8

the error was incurable and, therefore, not subject to waiver." *In re L.S.*, No. 02-17-00132-CV, 2017 WL 4172584, at \*16 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem. op.) (first citing Tex. R. App. P. 44.1(a)(1); then citing *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003); then citing *In re K.R.*, 63 S.W.3d 796, 799–800 (Tex. 2001); and then citing *Dow Chem. Co.*, 46 S.W.3d at 241).

### 2. Analysis

Here, Father points to three purportedly improper judicial actions or comments to support his partiality complaint: the trial court's holding Father in contempt and placing him in the sheriff's custody for failing to bring $385 to trial as ordered, the trial court's warning Father that it would hold him in contempt "if [he] refer[red] to [Mother's counsel] as Adam one more time," and the trial court's instructing Father's counsel to "please admonish [Father] to quit making faces" in response to the court proceedings. But having reviewed the record, we cannot conclude that this judicial conduct reflects the "deep-seated favoritism or antagonism" necessary to support a judicial-bias complaint. *See Liteky*, 510 U.S. at 555, 114 S. Ct. at 1157.

First, holding a party in contempt[4]—which is one means by which a trial court may exercise its broad discretion in enforcing its judgments, *see In re K.D.W.*, No. 07-08-0049-CV, 2008 WL 4889997, at \*2 (Tex. App.—Amarillo Nov. 13, 2008,

---

[4]We express no opinion regarding the correctness of the trial court's act of holding Father in contempt. *See supra* Section III.A.

no pet.) (mem. op.)—is not, in and of itself, evidence of judicial bias, *see Cooper v. McNulty*, No. 05-15-00801-CV, 2016 WL 6093999, at *6 (Tex. App.—Dallas Oct. 19, 2016, no pet.) (mem. op.) (concluding that even if the trial court had erred by holding appellant in contempt for disrupting court proceedings, this action did not "demonstrate the degree of antagonism necessary to show []partiality").

Further, although the trial court's complained-of comments expressed some impatience, dissatisfaction, annoyance, and perhaps even anger, the record falls well short of demonstrating bias or partiality. *See Song v. Kang*, No. 02-18-00375-CV, 2020 WL 1808487, at *8 (Tex. App.—Fort Worth Apr. 9, 2020, pet. denied) (mem. op.) (citing *Liteky*, 510 U.S. at 555–56, 114 S. Ct. at 1157). The record shows that Father repeatedly displayed a disrespect for the trial court and others in the courtroom by, among other things, arguing with the visiting judge during the temporary-orders hearing; failing to comply with—or even to read[5]—the trial court's orders; and repeatedly ignoring the trial court's instructions to stop referring to Mother's counsel by his first name. Thus, by admonishing Father as described above, the trial court was acting within its broad discretion to manage the trial proceedings and to maintain a proper level of decorum and dignity in the courtroom. *See Drake v. Chase Bank*, No. 02-13-00340-CV, 2014 WL 6493411, at *3 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op.) (noting that a trial court "has broad discretion to maintain

---

[5]At trial, Father acknowledged that he had not "read the temporary orders very thoroughly."

control in the courtroom" (citing *Dow Chem. Co.*, 46 S.W.3d at 241)); *see also Lantrip v. State*, 336 S.W.3d 343, 351–52 (Tex. App.—Texarkana 2011, no pet.) ("The trial court has discretion in the administration of the courtroom in order to maintain a proper level of decorum and dignity.").

Because Father has not shown judicial bias or prejudice, we overrule his second issue.

## C. Child Support

In his third issue, Father contends that the trial court abused its discretion by awarding Mother child support based on his earning potential as an engineer rather than his actual net income at the time of trial. We disagree.

### 1. Standard of Review and Applicable Law

We review a trial court's judgment granting child support for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *B.K. v. T.K.*, No. 02-19-00472-CV, 2021 WL 2149621, at *2 (Tex. App.—Fort Worth May 27, 2021, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or without reference to guiding principles or when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *B.K.*, 2021 WL 2149621, at *2. Although sufficiency of the evidence is not an independent ground of error under the abuse-of-discretion standard, it is a factor in assessing whether the trial court abused its discretion. *In re A.L.S.*, 338 S.W.3d 59, 65 (Tex.

11

App.—Houston [14th Dist.] 2011, pet. denied); *London v. London*, 94 S.W.3d 139, 143–44 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

For purposes of determining a parent's child-support liability, a trial court must calculate the parent's net resources, including all wage and salary income and other compensation for personal services; interest, dividends and royalty income; self-employment income; net rental income; and all other income actually being received. Tex. Fam. Code Ann. § 154.062(a), (b). Absent evidence of the obligor's gross resources, the trial court "shall presume that the party has income equal to the federal minimum wage for a 40-hour week." Tex. Fam. Code Ann. § 154.068(a); *M.G. v. T.G.*, No. 02-21-00433-CV, 2023 WL 2178762, at *4 (Tex. App.—Fort Worth Feb. 23, 2023, no pet.) (mem. op.).

In addition to actual earnings, a court may take a parent's earning potential into account when determining child support. *See Giangrosso v. Crosley*, 840 S.W.2d 765, 770 (Tex. App.—Houston [1st Dist.] 1992, no writ); *see also Pharo v. Trice*, 711 S.W.2d 282, 284 (Tex. App.—Dallas 1986, no writ) ("The duty to support is not limited to a parent's ability to pay from current earnings, but extends to his or her financial ability to pay from any and all sources that might be available."). Indeed, the Family Code specifically provides that "[i]f the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor." Tex. Fam. Code Ann. § 154.066(a). But "[t]rial courts consider

several factors, not just voluntary unemployment or underemployment, to determine child support." *In re Marriage of Lassmann*, No. 13-09-00703-CV, 2010 WL 3377773, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2010, no pet.) (mem. op.). Indeed, Family Code Section 154.123(b)(17) "allows trial courts to deviate from the guidelines for 'any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents.'" *Id.* (citing Tex. Fam. Code Ann. § 154.123(b)(17)).

## 2. Analysis

Father argues that the trial court abused its discretion by awarding Mother child support based on Father's earning potential rather than his actual earnings because "[t]here was zero evidence or testimony . . . that Father was intentionally unemployed or underemployed as required" by *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). But *Iliff* was concerned solely with what must be shown before a trial court may "set child support based upon earning potential of the obligor under [S]ection 154.066." *See id.* Yet the trial court did not state that it relied on Section 154.066 in making its income determination, and as noted above, courts may consider several factors—not just voluntary unemployment or underemployment—to determine a parent's child-support obligation. *Marriage of Lassmann*, 2010 WL 3377773, at *3. Here, Father testified that he had recently graduated from college with an engineering degree, that he had four job interviews lined up, and that he expected to earn between $55,000 and $90,000 per year as an engineer. The trial court indicated that it considered this

13

testimony and relevant factors, including Father's job skills and educational attainment, in making its income determination. *See* Tex. Fam. Code Ann. § 154.0655(c)(1)(E), (F).

Because the trial court could consider other factors besides Father's voluntary unemployment or underemployment in determining Father's child-support obligation and because there are facts in the record to support the trial court's award, we cannot conclude that the trial court abused its discretion by basing Father's child-support obligation on the salary that he expected to earn as an engineer. *See Marriage of Lassmann*, 2010 WL 3377773, at *4; *see also In re W.C.S.*, No. 04-21-00269-CV, 2022 WL 2821076, at *2 (Tex. App.—San Antonio July 20, 2022, no pet.) (mem. op.) ("[A] court may take a parent's earning potential into account when determining the amount of child support the parent must pay." (quoting *In re M.A.G.*, No. 04-01-00347-CV, 2002 WL 501657, at *3 (Tex. App.—San Antonio Apr. 3, 2002, no pet.) (not designated for publication))); *In re C.L.G.*, No. 04-19-00498-CV, 2020 WL 4607002, at *2 (Tex. App.—San Antonio Aug. 12, 2020, no pet.) (mem. op.) (same); *Giangrosso*, 840 S.W.2d at 770 (same) (first citing *Hazelwood v. Jinkins*, 580 S.W.2d 33, 37 (Tex. App.—Houston [1st Dist.] 1979, no writ); and then citing *Pharo*, 711 S.W.2d at 284); *Wetzel v. Wetzel*, 514 S.W.2d 283, 285 (Tex. App.—San Antonio 1974, no writ) (opining that even though the trial court's findings did not support appellant's contention that it had based its child-support award solely on appellant's earning potential, the trial court "properly could" have considered appellant's earning

potential in fixing the amount of child support). Further, we conclude that a more generous child-support award based on Father's acknowledged earning potential was in E.I.'s best interests. *See Iliff*, 339 S.W.3d. at 81 ("[I]n child[-]support decisions, the 'paramount guiding principle' of the trial court should always be the best interest of the child." (quoting *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 n.3 (Tex. 1993))). Accordingly, we overrule Father's third issue.

## D. Conservatorship

In his fourth issue, Father contends that the trial court abused its discretion by appointing Mother as E.I.'s sole managing conservator because the evidence was legally and factually insufficient to support its custody decision. We disagree.

### 1. Standard of Review and Applicable Law

We review a trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.P.B.*, 257 S.W.3d 804, 811 (Tex. App.—Dallas 2008, no pet.); *see In re W.M.*, 172 S.W.3d 718, 724 (Tex. App.—Fort Worth 2005, no pet.) (reasoning that the trial court has "wide latitude in determining the best interests of a minor child"). To determine whether a trial court abused its discretion, we must decide whether the court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004); *W.M.*, 172 S.W.3d at 725.

Although legal and factual sufficiency are not independent grounds for review in conservatorship cases, they are relevant factors in determining whether an abuse of discretion occurred. *In re D.R.L.M.*, 84 S.W.3d 281, 301 (Tex. App.—Fort Worth 2002, pet. denied) (first citing *Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); and then citing *Tex. Dep't of Health v. Buckner*, 950 S.W.2d 216, 218 (Tex. App.—Fort Worth 1997, no pet.)). An abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *In re M.L.*, No. 02-15-00258-CV, 2016 WL 3655190, at *3 (Tex. App.—Fort Worth July 7, 2016, no pet.) (mem. op.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g)).

An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see Low*, 221 S.W.3d at 620. We must be cognizant that the trial court is in a better position to decide custody cases because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent." *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

The best interest of the child is always the primary consideration in determining issues of conservatorship. Tex. Fam. Code Ann. § 153.002. Although there is a rebuttable presumption under Texas law that the appointment of a child's parents as

joint managing conservators is in the child's best interest, this presumption is removed if the trial court finds that there is a history of family violence involving the parents. *See id.* § 153.131(b). Indeed, Family Code Section 153.004(b) expressly prohibits a trial court from naming a party as a joint managing conservator "if credible evidence is presented of a history or pattern of past or present . . . physical . . . abuse by one parent directed against the other parent." *Id.* § 153.004(b).

### 2. Analysis

Father asserts that the evidence was legally and factually insufficient to support the trial court's finding that Father had a history or pattern of physically abusing Mother, but the record belies this assertion. As noted above, Mother testified that on Halloween night 2021, Father nearly ran her over, slammed a car door into her, got on top of her to restrain her by placing his legs on her arms and putting his hands over her mouth "to where [she] couldn't breathe," and later "pushed [her] all down the hall" and slammed her into the backdoor. Photographs detailing the injuries that Mother sustained that night were admitted into evidence. In addition, Mother offered excerpts from a text-message conversation with Father in which she stated that "[y]ou literally put your hands on me like two weekends ago" and Father—without denying the alleged abuse—responded, "[t]hen don't be with me." Mother also testified that in January 2022 Father grabbed her arm and threatened to kill her when she mentioned the possibility of giving their child up for adoption. Thus, the record contains some evidence of a substantive and probative character to support the trial

court's finding that Father had a history or pattern of physically abusing Mother. *See M.L.*, 2016 WL 3655190, at *3.

To support his argument that the trial court abused its discretion, Father makes much of the fact that he "vehemently dispute[d]" Mother's abuse claims during trial and points to certain controverting evidence in the record such as the fact that he was not arrested after the incident on Halloween night 2021. But "[i]n a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony," *C.L.W. v. R.V.W.*, No. 01-21-00283-CV, 2023 WL 5109878, at *8 (Tex. App.—Houston [1st Dist.] Aug. 10, 2023, no pet.) (mem. op.) (citing *Nelson v. Najm*, 127 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2003, pet. denied)), and an abuse of discretion does not occur when a trial court bases its decision regarding conservatorship on conflicting evidence, *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). Thus, the trial court had discretion to weigh the evidence and to reject any or all of Father's testimony. *See In re Rhodes*, 293 S.W.3d 342, 344 (Tex. App.—Fort Worth 2009, no pet.) ("As the factfinder, the trial court weighs the evidence and judges a witness's credibility, and the trial court may accept or reject any witness's testimony in whole or in part." (citing *Welborn Mortg. Corp. v. Knowles*, 851 S.W.2d 328, 332 (Tex. App.—Dallas 1993, writ denied))).

Father also contends that in reaching its decision regarding conservatorship, the trial court "arbitrarily ignored" the evidence that he offered regarding Mother's mental-health issues, history of drinking and drug use, and arrest for driving while

intoxicated. But because Mother presented credible evidence that Father had a history or pattern of physically abusing her, the trial court was prohibited from naming Father as a joint managing conservator. *See* Tex. Fam. Code Ann. § 153.004(b). Thus, the evidence that Father offered regarding Mother's parental fitness had no bearing on the court's decision to name Father as a mere possessory conservator. And given the Family Code's presumption that "a parent shall be appointed . . . managing conservator," *id.* § 153.131(a), as well as Father's disqualification from serving as a managing conservator, *see id.* § 153.004(b), we cannot conclude that the trial court abused its discretion by naming Mother as E.I.'s sole managing conservator.

In sum, having reviewed and considered the entire record, we conclude that the trial court's decision to appoint Mother as E.I.'s sole managing conservator and Father as a possessory conservator was supported by evidence of a substantive and probative character. *See id.* §§ 153.002, .004(a)–(b); *C.W. v. B.W.*, No. 02-19-00270-CV, 2020 WL 4517325, at *6 (Tex. App.—Fort Worth Aug. 6, 2020, no pet.) (mem. op.). Accordingly, we conclude that no abuse of discretion occurred. *See M.L.*, 2016 WL 3655190, at *3.

We overrule Father's fourth issue.

### E. Possession

In his fifth issue, Father contends that the trial court abused its discretion by denying him any access to, or possession of, E.I. We disagree.

19

### 1. Standard of Review and Applicable Law

Like conservatorship decisions, possession decisions are reviewed for an abuse of discretion. *See Vanderbol v. Vanderbol*, No. 02-23-00230-CV, 2024 WL 1925141, at *9 (Tex. App.—Fort Worth May 2, 2024, pet. denied) (mem. op.). And as with issues of conservatorship, the best interest of the child must always be the primary consideration in determining issues of possession. *See* Tex. Fam. Code Ann. § 153.002; *K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at *3 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.).

The Texas Family Code creates a rebuttable presumption that the standard possession order is in a child's best interest. *See* Tex. Fam. Code Ann. § 153.252; *see generally id.* §§ 153.3101–.316 (codifying terms of the standard possession order). But "[a] trial court does not abuse its discretion in restricting a parent's possession when the record contains some evidence to support a finding that such restrictions are in the child's best interest." *Nikolenko v. Nikolenko*, No. 01-20-00284-CV, 2022 WL 479988, at *16 (Tex. App.—Houston [1st Dist.] Feb. 17, 2022, pet. denied) (mem. op.) (citing *In re P.A.C.*, 498 S.W.3d 210, 219 (Tex. App.—Houston [14th Dist.] 2016, pet. denied)), *cert. denied*, 144 S. Ct. 1058 (2024); *see Butnaru*, 84 S.W.3d at 211; *W.M.*, 172 S.W.3d at 725. Thus, being named a conservator does not guarantee a parent access to a child. *See In re S.A.J.*, No. 14-20-00216-CV, 2020 WL 4689361, at *2 (Tex. App.—Houston [14th Dist.] Aug. 13, 2020, pet. denied) (mem. op.); *see also Vanderbol*, 2024 WL 1925141, at *10–11 (concluding that trial court did not abuse its discretion

20

by conditioning joint-managing-conservator parent's possession and access on his completion of a psychological evaluation, court-approved parenting course, and reunification therapy).

## 2. Analysis

Here, the trial court found that restricting Father's access to and possession of E.I. was in the child's best interest. Thus, the trial court ordered Father to complete (1) BIPP programming, (2) parenting classes, and (3) a psychological evaluation. The order provides that after fulfilling these three requirements, Father will be allowed to have supervised possession of E.I. on the first, third, and fifth Saturdays or Sundays of every month.[6]

The trial court based its possession decision on Father's "history or pattern of . . . committing family violence . . . , the testimony and evidence presented at trial, the age of the child, and the actions taken by [Father] during the pendency of th[e] suit." And having reviewed and considered the entire record, we cannot conclude that this decision constitutes an abuse of discretion. As detailed above, the record contains evidence of a substantive and probative character showing that Father committed acts of family violence against Mother. *See* Tex. Fam. Code Ann.

---

[6]In his appellate briefing, Father characterized the trial court's possession decision as a complete denial of his access to E.I. But contrary to Father's contentions, the final order merely conditions his rights of possession and access; it does not completely deny them. Thus, the authorities cited by Father addressing the complete denial of a parent's access to or possession of a child are inapposite.

21

§ 153.004(c) (mandating that when "determining whether to deny, restrict, or limit" a possessory-conservator parent's possession of a child, a trial court must "consider the commission of family violence"). And beyond Father's physical abuse of Mother, the record contains additional evidence of Father's general propensity towards violence.[7] *See id.* § 153.256 (listing factors that a trial court may consider when ordering the terms of possession of a parent named possessory conservator, including "the . . . best interest of the child" and "any other relevant factor"); *cf. In re M.C.L.*, No. 04-17-00408-CV, 2017 WL 5759376, at *4 (Tex. App.—San Antonio Nov. 29, 2017, no pet.) (mem op.) (recognizing that "[a] parent's tendency towards violence is relevant to a best interest determination" for purposes of Family Code Section 161.001(b)(2)).

Given this record, we conclude that there is some evidence to support a finding that the restrictions placed on Father's possession are in E.I.'s best interest. Therefore, the trial court did not abuse its discretion. *See Nikolenko*, 2022 WL 479988, at *16; *P.A.C.*, 498 S.W.3d at 219–20; *see also Iliff v. Iliff*, 339 S.W.3d 126, 141 (Tex. App.—Austin 2009) (mem. op.) (concluding that trial court did not abuse its discretion by restricting father's visitation until after he completed a "court-ordered neuropsychological evaluation"), *aff'd*, 339 S.W.3d 74 (Tex. 2011).

We overrule Father's fifth issue.

---

[7]For example, the record reflects that in 2019 Father pleaded guilty to domestic violence against his ex-wife and served fifteen days in jail and that in May 2023, Father showed up uninvited to his ex-wife's sister's home and tried to hit her and her fiancé with his vehicle after they instructed him to leave.

**F. Admission of Evidence**

In his sixth issue, Father contends that the trial court abused its discretion by admitting certain of Mother's exhibits over his objection that she had failed to properly disclose them.[8] We disagree.

**1. Standard of Review**

We review a trial court's ruling in admitting or excluding evidence under an abuse of discretion standard. *Richmond Condos. v. Skipworth Com. Plumbing, Inc.*, 245 S.W.3d 646, 664–65 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g) (citing *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000) (op. on reh'g)). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002) (op. on reh'g); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To obtain reversal of a judgment based on the erroneous admission or exclusion of evidence, an appellant must show not only that the trial court's ruling

---

[8]We note that under the current Texas Rules of Civil Procedure, the disclosure rules set forth in Rule 194 do not apply in suits—like this one—that are governed by the Family Code. *See* Tex. R. Civ. P. 194.1(a); *see also* Tex. Fam. Code Ann. §§ 301.001–.108. But because this suit was filed prior to September 2023, the version of Rule 194 in place at the time that the lawsuit was filed applies herein. *See* Tex. R. Civ. P. 194.2 cmts. 2021 and 2023; *see also In re Gamble*, 676 S.W.3d 760, 770 n.5 (Tex. App.—Fort Worth 2023, orig. proceeding) (applying version of Rule 194 that was in place at the time that the lawsuit was filed).

23

was in error but also that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000); *Ledbetter v. Mo. Pac. R.R. Co.*, 12 S.W.3d 139, 142 (Tex. App.—Tyler 1999, pet. denied). This standard does not require the complaining party to prove that but for the evidentiary ruling a different judgment would necessarily have resulted. *Tex. Health Harris Methodist Hosp. Fort Worth v. Featherly*, 648 S.W.3d 556, 577 (Tex. App.—Fort Worth 2022, pets. denied) (citing *JBS Carriers, Inc. v. Washington*, 564 S.W.3d 830, 836 (Tex. 2018)). Rather, if erroneously admitted or excluded evidence was crucial to a key issue, the error is likely harmful. *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 873 (Tex. 2008). Determining whether a particular error is harmful depends on the particular case. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In making this determination, we review the entire record. *Id.*

## 2. Analysis

Father asserts that the trial court abused its discretion by admitting certain exhibits that Mother purportedly failed to properly disclose, including (1) photographs of the injuries that Mother sustained during the incident on Halloween night 2021, (2) documentary evidence of Father's prior criminal conviction for domestic violence against his ex-wife, and (3) text messages that Father sent Mother after the Halloween incident.[9] But to the extent that Mother was required to disclose these exhibits,[10] it

---

[9]Although Mother correctly points out that Father did not cite to specific exhibits in his brief, we decline to find that Father has waived his complaint due to

appears that she did so by providing Father a categorical description of them. *See* Tex. R. Civ. P. 194.2(b)(6) (providing that a party must provide other parties "a copy—*or a description by category and location*—of all documents, electronically stored information, and tangible things that . . . [it] may use to support its claims or defenses" (emphasis added)).

In any event, because Father failed to object when the complained-of exhibits' content was introduced through testimony, he has forfeited his complaint regarding the exhibits' admission. "[A]ny error in admitting evidence is cured where the same

inadequate briefing because the exhibits about which he complains are readily identifiable in the record. *See Johnson v. State*, No. 14-10-00462-CR, 2011 WL 2083969, at *5 n.1 (Tex. App.—Houston [14th Dist.] May 19, 2011, pet. ref'd) (mem. op., not designated for publication) (declining to find that appellant had waived admissibility complaint despite having failed to identify the complained-of exhibits because they were readily identifiable in the record); *see also Eco Planet, LLC v. ANT Trading*, No. 05-19-00239-CV, 2020 WL 6707561, at *5 (Tex. App.—Dallas Nov. 16, 2020, pet. denied) (mem. op.) (Osborne, J., concurring) ("Appellate courts have the discretion to waive issues for inadequate briefing." (first citing *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994); and then citing *Horton v. Stovall*, 591 S.W.3d 567, 569–70 (Tex. 2019))). We distinguish this case from those in which the court is asked to search for the complained-of exhibits by sifting through volumes of the record without direction; in such cases we would be more inclined to find that the argument had been waived due to inadequate briefing. *See Johnson*, 2011 WL 2083969, at *5 n.1.

[10]Mother argues that because her pleadings included allegations of domestic violence, she was not required to provide initial disclosures. *See* Tex. R. Civ. P. 194.2(d)(7) (2021, amended 2023) (providing that "actions involving domestic violence" are exempt from initial disclosure). But because we overrule Father's admissibility complaint on other grounds, we need not determine whether Mother's domestic-violence allegations were sufficient to exempt her from the otherwise-applicable disclosure requirements.

25

evidence comes in elsewhere without objection." *Schwartz v. Forest Pharms., Inc.*, 127 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *accord Holliday v. Gray*, No. 05-18-01146-CV, 2020 WL 1969503, at *2 (Tex. App.—Dallas Apr. 24, 2020, pet. denied) (mem. op.) (citing *Combs v. Gent*, 181 S.W.3d 378, 385 (Tex. App.—Dallas 2005, no pet.)). Thus, a party forfeits a complaint regarding the admission of an exhibit when testimony regarding the exhibit's contents is made without objection. *See Benavides v. Cushman, Inc.*, 189 S.W.3d 875, 885 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (holding that appellant had forfeited any error in an incident report's admission by failing to object to the admission of a witness's videotaped deposition discussing the report's contents). Here, Mother testified regarding the injuries that she sustained during the incident on Halloween night 2021, both Mother and Father testified regarding Father's prior criminal conviction for domestic violence, and Mother testified regarding the text messages that she received from Father after the Halloween incident and read the relevant portions into the record. Because this testimony regarding the complained-of exhibits' contents was admitted without objection, any error in the admission of the exhibits themselves was cured. *See Schwartz*, 127 S.W.3d at 124; *see also Benavides*, 189 S.W.3d at 885; *cf. Matthew v. State*, No. 02-22-00140-CR, 2023 WL 2607750, at *7 (Tex. App.—Fort Worth Mar. 23, 2023, pet. ref'd) (mem. op., not designated for publication) ("A party forfeits a complaint regarding the admission of an exhibit when testimony regarding the exhibit's contents is made without objection.").

We overrule Father's sixth issue.

## G. Attorney's Fees

In his seventh issue, Father contends that the trial court abused its discretion by awarding Mother attorney's fees because Mother did not plead for sanctions and because the trial court did not find that Father's suit was groundless or filed in bad faith or with the intent to harass Mother.[11] This argument lacks merit.

Family Code Section 106.002 authorizes a trial court to "render judgment for reasonable attorney's fees and expenses" in a SAPCR. Tex. Fam. Code Ann. § 106.002(a). A trial court has broad discretion in awarding attorney's fees under Section 106.002, and we will not disturb such an award absent an abuse of that discretion. *In re M.A.N.M.*, 231 S.W.3d 562, 567 (Tex. App.—Dallas 2007, no pet.); *see Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). "The statute does not designate to whom fees may be awarded, nor does it limit the trial court's designation." *In re K.M.B.*, 606 S.W.3d 889, 900 (Tex. App.—Dallas 2020, no pet.) (citing Tex. Fam. Code Ann. § 106.002(a)). Thus, a trial court is not constrained to award attorney's fees only to a prevailing party, nor is it required to make a finding that a suit was filed frivolously or for the purpose of harassment before awarding attorney's fees. *See id.* ("[S]ection 106.002 does not impose a prevailing-party

---

[11]We note that, although such a finding was not a necessary prerequisite to the trial court's award of attorney's fees, the trial court did, in fact, state on the record that it had determined that Father was "not actually interested in seeing [his] child" and was only "interested in this litigation to harass [Mother]."

27

requirement . . . ."); *see also In re S.C.*, No. 05-18-00629-CV, 2020 WL 3046203, at *5 (Tex. App.—Dallas June 8, 2020, pet. denied) (mem. op.) (rejecting argument that in a SAPCR modification proceeding "attorney's fees may be awarded . . . only when the suit is brought frivolously or to harass" and concluding that notwithstanding such a finding the trial court was authorized to award such fees under Family Code Section 106.002).

Because—contrary to Father's assertion—the trial court was not required to find (1) that Mother was entitled to sanctions or (2) that Father's suit was groundless or filed in bad faith before awarding Mother attorney's fees, we overrule Father's seventh issue.

## IV. CONCLUSION

Having dismissed Father's first issue for lack of jurisdiction and having overruled his remaining issues, we affirm the trial court's order.

/s/ Dana Womack

Dana Womack
Justice

Delivered: November 21, 2024

28